## City of Henderson v. Winstead.

## Same v. City National Bank of Evansville, Indiana.

(Decided October 10, 1919.)

### Appeals from Henderson Circuit Court.

1. Municipal Corporations—Street Improvements.—A municipal corporation can not be made liable under a bond to cover the cost of a street improvement issued contrary to a statutory provision prohibiting such action on its part.

2. Municipal Corporations—Street Improvements.—A municipal corporation can not be held liable for street improvements unless it has made a valid and forcible contract for the improvements.

3. Municipal Corporations—Issue of Bonds Without Authority.— Where a municipality delivers its bonds and receives pay therefor, when it was without authority to issue bonds, the city in a suit by the purchaser can not defend on the ground that the bonds were illegally issued without authority.

4. Municipal Corporations—Restitution of Money.—Where the municipality obtains money or property of others without authority, the law, independently of any statute, will compel restitution or compensation, in a suit instituted by the purchaser of such bonds.

5. Money Received—Action for.—In actions for money had and received there must be privity existing between the parties in relation to the money sought to be recovered.

B. S. MORRIS for appellant.

VANCE & HEILBRONNER for appellee, City National Bank of Evansville.

DORSEY & DORSEY for appellee E. W. Winstead.

OPINION OF THE COURT BY JUDGE QUIN—Affirming City of Henderson v. Winstead, and reversing City of Henderson v. City National Bank of Evansville.

M. J. Bray and the appellee, E. M. Winstead, purchased from the city of Henderson certain street improvement bonds, giving their checks in payment therefor. Bray sold his bonds to one Eichel, and the latter

transferred same to the appellee, City National Bank of Evansville, Indiana (hereinafter referred to as the bank).

Separate suits were filed by appellees to recover the money paid for said bonds. These bonds were issued pursuant to an ordinance of the city of Henderson, passed July 12, 1912, and under an act of the legislature approved March 8, 1912, entitled "an act to amend the charters of cities of the third class" (Ky. Stats., sec. 3459a).

Hickman, Mayor, et al. v. Kimbley, 161 Ky. 652, 171 S. W. 176, was a suit to enjoin certain proceedings instituted by the city pursuant to an ordinance providing for the improvement of Third street in Owensboro, a city of the third class, and the court held that because it violated section 51 of the Constitution, the act of 1912 was unconstitutional and the ordinance was invalid.

In City of Henderson v. Lieber, Ex'r, et al, 175 Ky. 15, 192 S. W. 830, an effort was made to enforce a lien against a piece of property abutting a street improvement under an ordinance passed pursuant to section 3459a, Kentucky Statutes, but a recovery was denied because of the unconstitutionality of the statute.

In Cohen v. City of Henderson, etc., 182 Ky. 658, 207 S. W. 4, it appears that appellant became the owner of similar improvement bonds by purchase from the contractor or his vendee and suit was filed seeking a recovery from the city for the amount of these bonds with interest. A demurrer to the petition was sustained and this ruling, on appeal, was affirmed.

In City of Henderson v. Redman, et al., 185 Ky. 146, 214 S. W. 809, appellee, Youngblood, as a part of the purchase price of a house and lot conveyed to him by appellee, Redman, delivered to the latter certain of these improvement bonds whose issue had been authorized by an ordinance passed pursuant to the statute aforesaid. In affirming the judgment below the court points out the rule of law applicable in these cases; various authorities are referred to and the cases differentiated.

After reciting the facts relative to the purchase of the bonds by Youngblood the court says:

"The facts clearly present a case where both parties were mistaken as to the right of the city to either issue, sell or deliver the bonds, and one where it obtained

$1,100.00 from appellee without any consideration whatever. In such case can it be said that it would be a burden upon the taxpayer if the city should be required to rectify this mistake and to give back the wrongfully obtained cash consideration? We think not. The difference between this case and those where only services, machinery or improvements have been rendered or furnished is perfectly apparent. In the latter class of cases no funds went into or were made payable to the treasury of the municipality, and if it were made liable the treasury would be drawn on without a corresponding amount having gone into it, and that, too, in payment for services or articles which the municipality did not have the right to purchase, or if so it illegally purchased them. In that case the amount paid would not be with a corresponding sum previously paid by plaintiff, but with money furnished by the taxpayer. The difference between the two classes of cases affords ample room for the application of a different legal principle."

Referring to the right of recovery from the city in such cases, Judge Dillon in his work on municipal corporations, vol. 2, 5th ed., sec. 961, states:

"The principle upon which a recovery has been sustained under such circumstances is the broad obligation to do justice which rests upon all persons, natural and artificial; in consequence of which it has been declared that if a municipality obtains the money or property of others without authority, the law, independently of any statute, will compel restitution or compensation. The action is justified under the forms of the common law on the ground that it is an action for money of the plaintiff had and received by the municipality, being money paid by mistake, or upon a consideration which happens to fail, or money got through imposition. But if the municipality has not received any consideration for the issue of the bonds, the foundation for an action to recover a debt owing by the municipality does not exist, and an action by the purchaser or holder of the bonds against the municipality will not lie."

To same effect see Marsh v. Fulton County, 10 Wall. 676; Floyd County v. Owego Bridge Co., 143 Ky. 693, 137 S. W. 237.

Appellee Winstead purchased his bonds direct from the city, his suit is *in assumpsit* for money had and received. His status is precisely that of appellee Youngblood, in City of Henderson v. Redman, *supra*.

As to the appeal in the suit instituted by the bank a question different from that in the Winstead case is presented. It did not purchase the bonds held by it from the city, but received them by assignment or transfer from Eichel, who in turn had gotten them from Bray, the original purchaser; neither Bray nor Eichel is a party to this appeal.

It is difficult to tell from the bank's petition whether it is seeking a recovery on the bonds, or *in assumpsit*, but in either event its case must fail. The bonds are void, issued as they were under an unconstitutional statute, and hence created no obligation upon the city. The bank is in exactly the same position as was the appellant in Cohen v. City of Henderson, *supra*. The city did not receive any money from the bank.

To support an action for money had and received there must be some privity existing between the parties in relation to the money sought to be recovered. 27 Cyc. 857: Triplett v. Helm, 5 J. J. Mar. 651.

This principle is well illustrated, by the opinion of the United States Circuit Court of Appeals for the sixth circuit in the case of Travellers' Ins. Co. v. Mayor, etc., of Johnson City, 99 Fed. 663, in which the court had for consideration the question: "Whether one who, for full value, purchases in the market negotiable bonds payable to bearer, and unindorsed, issued by a municipal corporation to a railroad company of another state, to whom it has no power to issue the bonds, in payment of a subscription to the company's stock to which it has no power to make a subscription, . . . may recover from the municipal corporation the money paid by it in open market for the bonds, on the ground that that amount has been expended in conferring upon the city the benefit of the railroad and the depot and the stock, when it further appears that the corporation has power to make subscriptions for the stock of a domestic corporation, and to pay for the same in its bonds."

The court answered this question in the negative and states:

"The cause of action is for money had and re-

ceived to the use of the city. Such an action is based, not on an expressed or implied contract, but upon an obligation which the law supplies from the circumstances, because, *ex aequo et bono*, the defendant should pay for the benefit which he has derived at the expense of the plaintiff.''

It was further said that the stock was void in the hands of the city for want of power on its part to become a stockholder, that the railroad built on the land owned by the company did not become the property of the city or confer upon it any direct benefit as could raise an implied promise to pay therefor, independently of the void contract. See also Aetna Life Ins. Co. v. Middlesport, 124 U. S. 534; Swanson v. City of Ottumwa, etc., 131 Iowa 540; Ball v. Clark, 179 Ky. 455, 200 S. W. 623.

The point is made as to appellee E. W. Winstead that he was merely acting as the agent for his sister in the purchase of the bonds sued on, but we are satisfied that he was the purchaser and owner of the bonds and had the right to maintain the action.

For the reasons hereinbefore stated and following the rule laid down in the Cohen and Redman cases, *supra*, the judgment in City of Henderson v. Winstead must be affirmed, while the judgment in City of Henderson v. City National Bank of Evansville will be reversed for further proceedings consistent with this opinion.