Ralph Martin and Company, Inc., Appellant, v. J. D. McCue, Appellee.

Gen. No. 40,868.

Heard in the first division of this court for the first district at the October term, 1939. Opinion filed April 8, 1940.

LEWIS M. LEVINSON, of Chicago, for appellant.

No appearance for appellee.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

Plaintiff assignee sued to recover $849 claimed to be due from defendant to the Crystal Lake Country Club, a corporation organized under the laws of Illinois, not for profit (Smith-Hurd Ann. Stats., ch. 32, par. 158, p. 433 [Jones Ill. Stats. Ann. 32.251]) of which defendant was formerly a member. The affidavit of merits averred defendant resigned from the club, asserted he was not indebted as alleged and pleaded the bar of the five-year statute of limitations. Plaintiff replied denying defendant's resignation was valid and averring the five-year statute was not applicable. The facts were stipulated. Upon trial by the court there was a finding for defendant with judgment, and plaintiff appeals.

The facts were that defendant made a written application for membership which stated the membership would be subject to annual dues of $100, payable quarterly in advance, and would be "transferable subject to the rules and regulations governing the club." The application was accepted, and defendant elected a member by the board of directors. A certificate of membership was issued to him, which states that his membership "is subject to all by-laws and regulations governing this class of membership"; that it is transferable by assignment upon the books and surrender of the certificate as provided by the by-laws.

At a special meeting of the members held August 26, 1930, pursuant to notice, a resolution was passed which

levied an assessment of $100 against each member, payable in four equal instalments of $25 each, the first instalment to become payable on September 1st. At the same meeting a second resolution provided the annual dues should be increased to $175, to become effective September 1, 1930. Defendant was notified in writing of this action.

September 30, 1930, defendant, who was a member of the board of directors, tendered his resignation. On the same day he wrote the board tendering his resignation as a member of the club. His letter states: "I am attaching my membership certificate No. 504 which you may dispose of when possible. Anything realized on this membership you may send me when sold. I am attaching my check for $26.65, which is my dues and house account. There may be a small house account for the month of September, and if you will mail me this I will be glad to forward my check." The letter also assured the club that defendant's reason for resigning was distance from the club making it impracticable for him to use it. October 16, 1930, defendant paid to the club the sum of $26.65, $10.65 for August house account and $16 for the monthly instalment of annual dues of $175 for the month of September. It was customary for members to pay annual dues in monthly instalments. Defendant did not pay the $100 special assessment levied August 26, 1930. He has not paid the balance of annual dues for the year beginning September 1, 1930. No statement claiming these to be due was ever sent to him by the club.

At the time defendant became a member of the club, article 3, section 5 of the by-laws provided: "Upon the death or retirement of a member in good standing, his certificate of membership *shall be charged with regular accruing dues to the extent of the extinguishment of its par value,* unless such certificate is theretofore duly transferred to a regularly elected member of the Club." Article 3, section 6 of the by-laws pro-

vided: "A statement showing the amount due the club, including his dues, shall be sent by mail or other-wise to each member, who is indebted to the club, on the first day and the fifteenth day of each month, and when such dues or other indebtedness of any member shall remain unpaid for a period of one month, after date of such statement sent, his membership may be declared forfeited by a vote of the Board of Directors and he shall thereupon cease to be a member of the Club, but shall never-the-less be liable to the club for the payment of all unpaid dues and other indebtedness." This section also provided for reinstatement. Article 4, section 1 of the by-laws vested the control and management of the club in a board of nine directors to be elected by the members. Article 10 provided that the by-laws might be amended by a majority vote of the members present at any regular or special meeting of the club.

February 24, 1931, the board of directors accepted the resignation and ordered the membership certificate canceled. As already stated, no statement of indebtedness was ever thereafter sent to defendant nor any claim made that any sum was due from him. May 25, 1934, the club was adjudged bankrupt. A trustee in bankruptcy was thereafter appointed, and November 20, 1936, by authority of the United States District Court, the claim was assigned to plaintiff. This suit was begun on June 15, 1937.

Defendant has not appeared in this court in support of the judgment entered in his favor. Nevertheless, the judgment must be sustained; in the first place, because plaintiff failed to prove an indebtedness against defendant, and, in the second place, because assuming there was proof of liability prima facie the action was barred by section 15 of the statute of limitations (see Ill. Rev. Stat. 1939, par. 16 [ch. 83; Jones Ill. Stats. Ann. 107.275]).

The rules of law applicable to the relationship which exists between the corporation organized not for profit and its members have been developed out of customs of our social life which bring groups of people with a common purpose together in associations of this kind. These rules are well stated in *Boston Club v. Potter*, 212 Mass. 23, 98 N. E. 614, Ann. Cas., 1913 C, p. 397; *Anderson v. Amidon,* 114 Minn. 202, 130 N. W. 1002, Ann. Cas., 1912 B, p. 987. The relationship arises out of the application of the member, its acceptance by the club and the provisions of the by-laws by which both are to be governed in their relationship to each other. The by-laws seem to contemplate that the relationship between the club and the member may be ended at the option of the member while in good standing, and that the member is obligated for the payment only of such dues and assessments as have become due and payable at the time of the severance of the relationship. Article 3, section 5 of the by-laws expressly provides that upon the death or retirement of a member his certificate of membership should be charged with the regular accruing dues to the extent of the extinguishment of its par value. The stipulation of facts here shows that this was in the contemplation of the parties and that it was the understanding of defendant that his membership had a value which would meet these and leave something to be returned to him. Apparently, the board of directors after holding the matter under consideration for some time agreed and ordered that the certificate of membership should be canceled. No claim was ever made thereafter by the club that anything whatever was due from defendant. That claim seems to have been first made by the assignee of the trustee. The acceptance of the certificate and its cancelation by the board must be regarded as a satisfaction of every claim against defendant. If, however, we assume under the facts that defendant at the time his resignation was offered (September 30, 1930) or ac-

cepted (February 24, 1931), a claim existed the claim would be barred by the five-year statute of limitations. Plaintiff argues that this section of the statute is not applicable for the reason that the action is based upon a written contract. Plaintiff says that the contract sued on is a written one composed of the application, the certificate and the by-laws, and *Jones v. Supreme Lodge Knights of Honor,* 236 Ill. 113, 86 N. E. 191 and *Coats v. Chicago R. I. & P. Ry. Co.,* 134 Ill. App. 217, are cited.

The *Jones* case was an action based upon a benefit certificate payable to the wife of the insured, who had died before his death, and the by-laws were introduced in evidence to show to whom payment was to be made in that case. It was argued that the admission of evidence as to who the heirs entitled to recover were would make the certificate of benefit an oral contract. The court held that it did not.

In the *Coats* case plaintiff shipper brought an action against a carrier for failure to observe its common-law obligations to transport. Bill of lading for the goods had been issued shortly after receipt of the property which was to be transported. The court held that the action was based upon the written bill of lading and the 10-year limitation applicable. These cases are clearly distinguishable in that in each the action was based upon a written agreement, while here the action is based on the implied contract arising out of relationship of the parties as disclosed by the evidence.

Plaintiff has cited many cases tending to show that the relationship created by the application, the acceptance and the by-laws, constitutes a written contract. This is not questioned. The question here concerns the termination of the relationship as disclosed by the acts of the parties. The judgment will be affirmed.

*Judgment affirmed.*

O'Connor and McSurely, JJ., concur.