## Barnes v. Louisville & N. R. Co.

April 30, 1940.

J. J. Hancock, Judge.

James T. Robertson for appellant.

Woodward, Dawson & Hobson and H. T. Lively for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

The appellant, F. P. Barnes, purchaser of the chose in action from the trustee in bankruptcy of Kentucky Feed Mills, Incorporated, sued the appellee, Louisville & Nashville Railroad Company, to recover $1,890 overcharged for switching 1,400 cars of grain and grain products. The shipments were over the defendant's lines from Louisville to points wholly within Kentucky. The period covered is from March 10, 1923, to August 2, 1933. It was alleged that the transportation was under written contracts and "subject to the legal and lawful rates named in the tariffs in effect on the dates the respective shipments were made as described in said written contracts." They are uniform bills of lading adopted by the Railroad Commission of Kentucky. It was further alleged that during the period "the legal and published contract switching rates chargeable" for the shipments "were and are $1.35 per car as published in said defendant's tariff then legally in effect," but the shipper was compelled to pay $2.70 a car "which made an illegal overcharge on said 1400 cars of $1.35 per car." Based on "the illegal charging and exacting of said $1.35 per car in excess of the legally applicable switching rate by the defendant, the defendant has had and received" from the shipper $1,890 "more than it was legally entitled to charge said company, which said amount is now owing to this plaintiff." Demand and refusal were pleaded.

The answer "admits that the allegations made in

the petition herein are true." It then pleads that more than two years had elapsed since the last charge was made and that plaintiff's claim was barred by the statute of limitations. The court sustained this plea.

The sole question before us is whether the general statutes of limitations or the provisions of a two-year limitations contained in the statutes regulating railroad rates and charges shall apply.

The Act of 1893 (Chapter 171) dealing comprehensively with railroads defines "extortion" to be the charging and collecting by a railroad corporation for its services of more than a just and reasonable rate. Section 816, Kentucky Statutes. A company guilty of "extortion" is subjected to a criminal penalty and made liable in damages to any party aggrieved. However, it is provided that "all prosecutions and actions * * * shall be commenced within two years after the offense shall have been committed, or the cause of action shall have accrued." Section 819, Kentucky Statutes. The provisions of that act authorizing criminal proceedings for extortion have been held void because no standard is prescribed for determining what are just and reasonable rates. Louisville & N. Railroad Company v. Commonwealth, 99 Ky. 132, 35 S. W. 129, 18 Ky. Law Rep. 42, 33 L. R. A. 209, 59 Am. St. Rep. 457. In 1900, a curative statute was enacted. Section 820a-1 et seq., Kentucky Statutes. This act provides that upon complaint, or on its own initiative, the Railroad Commission may determine whether a corporation has been charging or collecting extortionate rates. Procedure is outlined for a hearing and determination of the issue. If the Commission finds that the company is or has been guilty of extortion, it shall make and fix a just and reasonable rate. If the company should thereafter charge or collect a higher rate for like services, it shall be deemed guilty of extortion and upon conviction subjected to certain penalties. The act of 1893 and the act of 1900 are in pari materia and must be read together. McChord v. Louisville & N. Railroad Company, McChord v. Cincinnati, N. O. & T. P. Ry. Co.; 183 U. S. 483, 22 S. Ct. 165, 46 L. Ed. 289.

An Act of 1922, Chapter 102, amended in 1930, Chapter 166 (Section 201g-1 et seq., Kentucky Statutes), "Further regulating common carriers and prescribing the duties and powers of the railroad commission with

reference thereto," provides for the publication of tariffs for intrastate shipments and for their filing with and approval by the Kentucky Railroad Commission. The act makes it unlawful for any carrier "to charge, demand, collect or receive a greater or less compensation for the transportation of property or for any service rendered in connection therewith than is specified in such printed schedules or tariffs." Section 201g-6, Kentucky Statutes. Other restrictions are imposed, remedies provided, and procedure established. A violation of the act is declared to be a misdemeanor and a penalty is prescribed. Section 201g-16, Kentucky Statutes. But prosecutions must begin within two years. Section 201g-17, Kentucky Statutes. As to civil actions, it is provided by Section 201g-18:·

"The rights, privileges and remedies herein prescribed shall not be in lieu of, but in addition to the rights, privileges and remedies now existing in such cases under the statutes or the common law."

These several statutes impose restrictions upon carriers and provide aggrieved patrons with rights and remedies not existing at common law either exactly or correspondently. We have held that the limitations of two years prescribed by Section 819 applies to a suit to recover excess charges made in violation of the long and short haul provisions of the act of 1893 (being Section 820 of the Statutes), and stated that the limitations would likewise apply to an action based upon extortion as defined in Section 816. Louisville & N. Railroad Company v. Walker, 110 Ky. 961, 63 S. W. 20, 23 Ky. Law Rep. 453. Neither that act nor any other at the time the decision was rendered contained such a saving clause as Section 201g-18 of the Statutes. It first appeared in the act of 1922, Chapter 102, Section 18. That act declared, as we have stated, that the "rights, privileges and remedies" therein prescribed should not be in lieu of but in addition to those existing under the common law. An amendment enacted in 1930, Chapter 166, Section 24, added "the statutes or."

It is to be observed that the only right of civil action for a violation of the statutes prohibiting the collection of excessive rates is contained in Section 816, which in general terms only defines "extortion" as charging "more than a just and reasonable rate of toll

or compensation." The later acts establish the criterion of reasonableness to be the rates established by the carrier by and with the approval of the Railroad Commission and re-define "extortion" as collecting more than the tariff. It is a close question whether or not the two-year limitation provision as to a cause of action for damages for extortion—contained only in Section 819—is exclusive. In enacting the later statutes further regulating railroad charges and creating additional liabilities, the legislature did not expressly refer to any period of limitations but did make a specific reservation of all common law rights and remedies. That must be recognized and given effect.

It may be noted that a statute of limitations operates generally only on the remedy a party may have and does not extinguish his right. 17 R. C. L. 666. The foregoing saving clause specifically reserved not only all rights but all remedies for their enforcement which were available under the common law or under other statutes. All statutes of limitations appropriate or related to whatever cause of action there may be were thereby retained. The question, therefore, is resolved into whether the legislature intended the special statutory right to recover an overcharge as an "extortion" to be exclusive or cumulative.

At common law a shipper had a right of action for damages resulting from the exaction by a carrier of an unreasonable or excessive rate or charge, except that if excessive charges were voluntarily paid for a long course of years they could not be recovered. 9 Am. Jur., "Carriers," Sections 172, 174. Since the reasonableness of rates is now a matter controlled and established by statute, this specifically related common law right and restriction, in so far as the aspect of reasonableness of the charge is concerned, must be deemed to have been abolished and superseded by the Statutes. But we cannot agree with appellee's argument that since the common law knew no such thing as established rates and tariffs as now current, there was no common law action to recover the difference between an established rate and a greater charge. 13 C. J. S., Carriers, Section 320, 767.

What is the effect of the statutory provisions for procedure before and determination by the Railroad Commission in respect to claims for reparation? This

code of laws makes provision for the recovery of unreasonable charges and overcharges by proceedings before and through the Railroad Commission, some of which are mandatorily required to be pursued before resort is had to the courts. Cf. Southern Railway Company v. Frankfort Distillery Company, 233 Ky. 771, 26 S. W. (2d) 1025. As to such class of rights and specific procedure, it cannot be questioned that the special two-year limitations period applies. A claim for reparation based upon the ground that tariff rates charged were unreasonable and discriminatory is illustrative. Illinois Cent. R. Company v. Paducah Brewery Company, 157 Ky. 357, 163 S. W. 239; Woodrich v. Northern Pacific Railroad Company, 8 Cir., 71 F. (2d) 732, 97 A. L. R. 401. In the latter case a similar saving clause in a North Dakota statute was held inapplicable to an action for damages for alleged overcharges where it appeared the rates exacted were those prescribed by the approved tariffs. The decision followed the leading case of Texas & Pacific Railroad Company v. Abilene Cotton Oil Company, 204 U. S. 426, 27 S. Ct. 350, 358, 51 L. Ed. 553, 9 Ann. Cas. 1075, construing a provision of the Interstate Commerce Act, relating that nothing in Chapter 1, "shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." 49 U. S. C. A., Section 22. The Supreme Court construed that section generally in the following language:

> "This clause, however, cannot in reason be construed as continuing in shippers a common-law right, the continued existence of which would be absolutely inconsistent with the provisions of the act. In other words, the act cannot be held to destroy itself. The clause is concerned alone with rights recognized in or duties imposed by the act, and the manifest purpose of the provision in question was to make plain the intention that any specific remedy given by the act should be regarded as cumulative, when other appropriate common-law or statutory remedies existed for the redress of the particular grievance or wrong dealt with in the act."

The converse of those rulings—that if the case is purely of law and does not involve peculiar issues, determinable by primary resort to the Railroad Commis-

sion, pre-existing common law rights and remedies may be invoked—is likewise supported by the decisions. Illinois Cent. R. Company v. Henderson Elevator Company, 138 Ky. 220, 127 S. W. 779; 9 Am. Jur., "Carriers," Section 181; California Adjustment Company v. Atchison, T. & S. F. Railroad Company, 179 Cal. 140, 175 P. 682, 13 A. L. R. 274; Thomas v. Chicago, B. & Q. Railroad Company, 127 Kan. 326, 273 P. 451, 64 A. L. R. 322. Thus the saving clause of the Interstate Commerce Act, Section 22; 49 U. S. C. A., Section 22, is uniformly construed to leave jurisdiction in the state courts for the decision of all questions as to whether a carrier has exacted a return in excess of that prescribed by its published schedules where the reasonableness of the rate is not assailed and no question affecting the power or administrative policy of the Interstate Commerce Commission is involved. This line of authorities affords an imperfect analogy, though the principle is the same when it is considered that the problem we have before us is one of applying the restriction in a code of laws dealing with the particular subject, which code contains a section having the effect of expressly declaring the rights and remedies therein established to be cumulative and not exclusive. See an excellent analysis of the subject by the Honorable Joseph E. Marks, a recognized authority in railroad rate matters and legal problems arising therefrom, in 23 Kentucky Law Journal, 543.

The conclusion, therefore, is that if the shipper's grievance presents a question of administration or one peculiarly within the authority and jurisdiction of the Railroad Commission, relief must be sought there first; or if his case presents a grievance arising from the alleged violation of some duty or infringement of some right created by the statutes dealing with railroad operations which did not exist at common law, in either case the two-year limitations provision must apply. But if there is presented to the courts only a question of applying the law to definite and certain facts, with the pleading of some common law remedy which affords redress for the alleged wrong, then the statutory limitations period peculiarly applicable to that common law action must control.

The appellant takes the position that he had three rights or remedies for the wrong admitted to have been

done the shipper, namely, (1) to sue at common law for breach of the written contracts; (2) to sue in assumpsit on an implied contract; and (3) to sue under the statutes for extortion. He chose, says he, to sue on the written contracts, to which the 15-year statute of limitations applies, and brought his suit in time. In support of this contention, appellant cites Richardson v. Louisville & N. Railroad Company, 129 Ky. 449, 111 S. W. 343, 112 S. W. 582, 33 Ky. Law Rep. 916, 972, in which we held that a shipper could waive the tort and sue on the contract for damage to property during transit and that the 15-year statute applied. We think the principle of that case is not in point here. It is to be observed that the petition alleges that the correct rate which should have been charged the shipper was that established by the tariffs and the rate charged was in excess thereof. The contracts were to render a service for a stipulated sum. There is no provision in the bills of lading agreeing to refund any overcharge embraced within that sum. The right of action, therefore, is not for breach of the written contracts although it springs from those contracts.

There is also to be found in the petition allegations sufficient to support an action in assumpsit for money had and received, based upon a promise implied in law, or an obligation which the law supplies from the circumstances because in fairness and in equity the defendant should pay back the amount by which he was enriched at the expense of the plaintiff. City of Henderson v. Winstead, 185 Ky. 693, 696, 215 S. W. 527; Bituminous Casualty Exchange v. Ford-Elkhorn Coal Company, 243 Ky. 456, 48 S. W. (2d) 1057. To such a cause of action the two-year limitations period does not apply. In the absence of a motion to elect the plaintiff had the right to rely upon this cause of action.

The petition alleges without specification that the 1,400 cars on which plaintiff claims excessive charges were collected were handled "from March 10, 1923, to and including August 2, 1933." The suit was filed March 10, 1938. There was no motion to require the petition to be made more definite or specific. It is probable that very few shipments were made or overcharges exacted during the five months coming within the period of the five-year statute of limitations (Section 2515,

Kentucky Statutes); but the condition of the record in that respect requires us to determine whether the plaintiff may maintain his common law action for money had and received.

In enacting the several statutes regulating common carriers, the legislature declared that the rights and remedies therein established should be in addition to the common law rights of all the parties. That declaration of intent must be respected and given effect. The aggrieved person could waive the tort created by statute and seek relief at common law. We regard the common law action for money had and received applicable to the case presented by this record. There is disclosed the fact that the defendant was wrongfully enriched at the expense of the plaintiff. It was doubtless a mistake on the part of both the carrier and the shipper. Good conscience and fairness raise the implication of a legal obligation to refund the amounts so unlawfully collected. It was so held in Fletcher Paper Company v. Detroit & M. R. Company, 198 Mich. 469, 164 N. W. 528, which was affirmed in 248 U. S. 30, 39 S. Ct. 13, 63 L. Ed. 107; Jeremy Fuel & Grain Company v. Denver & R. G. R. Company, 60 Utah 153, 207 P. 155; A. L. Jones Company v. Chicago, M. & S. & P. Ry. Company, 213 Ill. App. 283. We think the petition stated a cause of action of this character. Of course, the privilege of pleading the appropriate statute of limitations is available to the defendant.

The judgment is reversed.

Whole court sitting.

Judge Cammack dissenting.