## PETTY & RIDDLE, Inc., v. LUNT.

No. 6401.   Decided April 21, 1942.   (138 P. 2d 648.)

[1]*Brown* v. *Cleverly*, 93 Utah 54, 70 P. 2d 881.

See 34 Am. Jur., 77; 48 C. J. S., Payment, sec. 318.

Rehearing denied Oct. 22, 1942.

*Morris & Matheson,* of Cedar City, for appellant.

*A. Ladru Jensen* and *Elias Hansen,* both of Salt Lake City, for respondent.

McDONOUGH, Justice.

This action was commenced in the District Court by respondent corporation for certain moneys claimed to be due from appellant on two separate counts. At the conclusion of the evidence the lower court instructed the jury to bring in a verdict in favor of respondent corporation in the sum of $238.86 on the first cause of action and $530.55 on the second. From a judgment entered on the verdict this appeal was taken.

Appellant's points are three in number and may be set forth as follows: (1) The complaint does not state facts sufficient to constitute a cause of action; (2) The cause of action attempted to be set forth is barred by the 4-year stat-

ute of limitations; and (3) The lower court should have directed a verdict for appellant on the evidence adduced.

The facts are undisputed, and if it be determined that respondent is entitled to recover there is no contention that the amount of the judgment is incorrect.

In 1934 Charles B. Petty and appellant Wilson N. Lunt were the owners of nearly all of the stock in respondent corporation—at that time called Petty and Lunt, Inc. Of 1,000 shares subscribed each owned 498, with close relatives of each holding the other four shares. On July 10, 1934, Petty wrote to appellant and made an offer of $1,750 for the 500 shares of stock owned by the latter and his relatives. Division of certain corporate property and assets was also proposed, in part as follows:

"Cash on hand and in bank shall be divided, all trucks and equipment shall be divided on a give and take basis, and the remaining assets including accounts receivable to be liquidated, it being understood and agreed that any account payable shall first be paid out of the monies of said company, before said division.

"The equipment herein sold includes the cash register, and air compressor and lift, subject to a contract with Mr. Glazier.

"I will accept the Ford V-8 truck and you have the Dodge, the trailer and $100.00 cash *and the balance to be divided equally after all bills payable are paid* from the monies on hand." (Italics added.)

This offer was accepted by appellant and the deal consummated—including the division of property and other assets. However, subsequently the State Tax Commission and the Bureau of Internal Revenue claimed from respondent corporation certain sums as owing on account of delinquent taxes for the years, 1932, 1933, and 1934. The corporation paid these taxes and was reimbursed by Mr. Petty for one-half of the taxes due up to the time of the execution of the recited agreement. For the other one-half of the taxes demand was made on appellant by the corporation on April 15, 1935, for taxes claimed by the state, and on March 15, 1936, for taxes claimed by the federal government. It is for one-half of these taxes paid by respondent corporation that this suit was commenced on May 11, 1940.

Since appellant's second contention that this action is barred by the statute of limitations is, as we view the matter, decisive of this case we need not discuss the other questions involved.

Appellant contends that respondent's cause of action, if any, is for money had and received; that under section 104-2-30, R. S. U. 1933 and section 104-2-23, R. S. U. 1933 (amended by Chapter 113, Laws of Utah 1935), such an action should be commenced within four years from the time of its accrual; that respondent's right of action, if any, arose when it became aware that the taxes in question were still unpaid—or at all events when demand was made by respondent on appellant for refund of an amount sufficient to pay one-half the taxes; that this was more than four years prior to the date this action was commenced; that therefore said cause of action, if any ever existed, is barred by the statute.

It is clear from the facts of this case that if appellant's contention that respondent's alleged rights are founded upon "implied contract" the consequences are as appellant claims. But respondent urges that his action is for breach of a written contract between Petty and Lunt—respondent being a third party beneficiary. In support of its claim that the corporation is the proper party to bring this action respondent has cited the case of *Sutton* v. *Moreland,* La. App., 177 So. 396, 398. The facts in that case parallel those in this case except that the one party to the agreement paid all the delinquent taxes and brought the action for contribution from the other stockholders. The language of the court upon which respondent relies to support its right to bring this action is as follows:

"We find it unnecessary to pass upon the question of whether or not defendants can be compelled to contribute toward payment of the income tax to the extent of the amount of dividends received by them. Even if such obligation exists it is not in favor of plaintiff in his individual capacity. Only the corporation would have the right to compel contribution from defendants. *The debt in question was that of the corporation, and it was with corporate funds that payment thereof was to be made. The failure of payment by defendants could*

*result in a contribution claim in favor of no one except the corporation."* (Italics added.)

However, the italicized part of the quotation would defeat respondent in this case for the reason that if respondent's right of action is for contribution from the stockholders who participated in the division of surplus (or dividends), then in this case such action must have been brought within four years. Since it was not so commenced, the statute of limitations would appear to be a good defense.

Respondent meets appellant's contention that the right of action, if any, is founded upon "implied contract" by asserting that Lunt "agreed to pay all accounts and bills payable of respondent corporation" before the money was divided. And as to the cases relied on by appellant respondent further urges that they are not in point because

"In this case unlike the cases cited, Mr. Lunt did *expressly agree to pay the bills and accounts* of the * * * company out of its funds before taking any of the money of the corporation." (Italics added.)

The facts, however, do not bear out respondent's contention in this regard. Nowhere in the agreement does appellant Lunt agree to pay the bills and accounts of the corporation. And the allegation in the complaint that the agreement provided that "all corporate debts, accounts and obligations of any and every nature * * * *should first be paid in full by said defendant as corporate agent"* (Italics added) is not sustained by the evidence.

Respondent's contention to the contrary is founded on evidence to the effect that it was appellant who managed the affairs of the corporation and that subsequent to the agreement it was appellant who signed all checks in payment of outstanding obligations. His so acting, however, was the act of the corporation. The payment of accounts was a corporation act; the division of the specified assets was the action of the parties to the contract pursuant to its terms. Any duty which appellant had to pay the taxes

here involved arose out of his employment with the company —not out of the written contract with Petty. Insofar as the agreement is concerned it was an agreement as to a division of certain assets and surplus. The provision that "any account payable shall first be paid out of the monies of said company" was not a promise on the part of either Petty or Lunt to pay said accounts but a limitation on the amount of surplus or "cash on hand" which would be distributed. If distribution was made to the stockholders in excess of the amount agreed to be distributed, an action on implied contract would lie for the excess.

Nor would the action be one upon a "contract, obligation or liability founded upon an instrument in writing" under the provisions of Section 104-2-22, R. S. U. 1933, but would be governed by the provisions of Section 104-2-23, as "not founded upon an instrument in writing." The obligation if any to refund the money in this case did not arise from the written contract but was imposed by law because of the circumstances under which it was paid. The Restatement of the Law on Restitution covers this field of liability under the heading of "Mistake of Fact." Section 20 thereof reads as follows:

"A person who has paid another an excessive amount of money because of an erroneous belief induced by a mistake of fact that the sum paid was necessary for the discharge of a duty, for the performance of a condition, or for the acceptance of an offer, is entitled to restitution of the excess."

In the case of *Brown* v. *Cleverly*, 93 Utah 54, 70 P. 2d 881, 885, where a vendee was suing for return of money paid the vendor under a contract for the sale of land rescinded by the vendor, we determined that the right to recover was based on implied contract:

"We must consider first whether plaintiffs' right to recover the purchase money paid by them is founded upon the written contract although it contains no express provision covering such right. If founded upon such contract, then section 104-2-22, R. S. 1933, fixing the limitation at six years, would be applicable. We are of the opinion

that plaintiffs' right to recover the payments made by them rests, not upon the written contract, but upon an implied promise, created by law, of defendants to repay the purchase money paid if they should default in the performance of the contract. *The action could not be based upon the written contract, for it contained no promise by defendants to return the purchase price.* While it is true that the payments were made under the written contract and the relations of the parties were to that extent affected by the writing, yet that instrument is not declared on in the action to recover the payments made as the basis of the right to recover. It is only an incident to the accrual of the right to recover. *The basis for a recovery rests in the implied promise of defendants to return the purchase money which the law creates from their duty to return it upon failure by them to perform the contract and give plaintiffs what they contracted for.* The action rests in implied assumpsit as for money had and received. (Italics added.)

To the same effect where the contract was mutually abandoned, see *McMillen* v. *Bancroft*, 162 Wash. 175, 298 P. 460.

The Supreme Court of Washington in construing a statute similar to our Section 104-2-22, held:

"We are inclined to the opinion that this statute does not contemplate quasi-contracts or liabilities merely contractual in nature but liabilities which are either expressly stated in a written agreement or which follow by natural and reasonable implication from the promissory language of the agreement, as distinguished from liabilities created by fictional processes of the law or imported into the agreement from some external source." *Bicknell* v. *Garrett*, 1 Wash. 2d 564, 96 P. 2d 592, 595, 126 A. L .R. 258.

And it is the rule in other jurisdictions where an action is brought to recover an excessive amount paid—either under a written contract or other agreement—where there is no written promise to return said amount, that the action is founded on "implied contract" and the statute of limitations with reference to obligations not founded on a written instrument is applicable. *Leavenworth* v. *Seaman*, 139 Wash. 6, 245 P. 7 (overpayments on account of erroneous allowance of a trestle in the construction of a water works under a written contract) ; *Barnes* v. *Louisville*

& N. R. Co., 283 Ky. 261, 140 S. W. 2d 1041 (action to recover overcharge on shipping) ; *Schaeffer* v. *Miller,* 41 Mont. 417, 109 P. 970 (action to recover money paid for a purpose not carried out) ; *School District No. 34* v. *Joint School District No. 34,* 156 Okl. 5, 9 P. 2d 771 (action to recover money erroneously placed to the credit of defendant). In *Patterson* v. *Doe,* 130 Cal. 333, 62 P. 569, 570, the court quoting from the earlier case of *McCarthy* v. *Mt. Tecarte Land & Water Co.,* 111 Cal. 328, 43 P. 956, 959, held:

" 'But the cause of action is not upon a contract founded upon an instrument in writing, within the meaning of the Code, merely because it is in some way remotely or indirectly connected with such an instrument, or because the instrument would be a link in the chain of evidence establishing the cause of action. In order to be founded upon an instrument in writing, the instrument must itself contain a contract to do the thing for the nonperformance of which the action is brought.' This language was quoted with approval in *Thomas* v. *Pacific Beach Co.,* 115 Cal. 136, 46 P. 899, in which latter case suit was brought on an implied assumpsit to recover back money paid for land under a written contract for the sale thereof. No agreement to restore the money on failure to convey the land being contained in the contract, it was held that the cause of action was barred in two years after the last payment."

In *Futrall* v. *City of Pine Bluff,* 8 Cir., 87 F. 2d 711, 712, the court held that

"an action to recover money paid or obtained through an honest mistake of fact or law, in the absence of fraud, corruption, or willful diversion, is an action founded upon an implied contract or liability, not in writing."

See, also, *McNair* v. *Burt,* 5 Cir., 68 F. 2d 814; *Boggs Oil & Drilling Co.* v. *Helmerich & Payne,* 145 Kan. 747, 67 P. 2d 579; *Todd* v. *Board of Education of City of Los Angeles,* 122 Cal. 106, 54 P. 527; *Johnson* v. *Harrison Hardware & Furniture Co.,* 119 Fla. 470, 152 So. 708, 160 So. 878; *Ralph Martin & Co.* v. *McCue,* 304 Ill. App. 358, 26 N. E. 2d 526; *Lively* v. *Tabor,* 341 Mo. 352, 107 S. W. 2d 62, annotated in 111 A. L. R. 976, 984.

Appellant, however, contends that though the four-year statute of limitations governs under the facts of this case,

nevertheless, since approximately $500 of the amount paid to the Collector of Internal Revenue was paid within four years of the commencement of the action the judgment should be affirmed as to the portion thereof based upon the obligation so paid. "The cause of action did not arise in favor of the corporation," it asserts, "until it had paid the assessment." In this it errs. An action accrued, as hereinbefore stated, on behalf of the corporation when it discovered that there was an overpayment and demand for restitution had been made. Proof that the obligation should have been paid, or the money left with the corporation to pay it before the withdrawal of the assets in question would support an action without showing that the obligation had in fact been paid.

Respondent's action, if any, was on an "implied contract." Therefore the action is barred by the provisions of Section 104-2-23, R. S. U. 1933, it having accrued more than four years before it was commenced.

The judgment of the lower court is reversed and the cause remanded with instructions to enter judgment in accordance with the views herein expressed. Costs to appellant.

MOFFAT, C. J., and WOLFE, LARSON, and PRATT, JJ., concur.