928 P.2d 1358 (1996)
TELLURIDE COMPANY, Petitioner-Appellant,
v.
SAN MIGUEL COUNTY BOARD OF EQUALIZATION, Respondent-Appellee, and
Board of Assessment Appeals of the State of Colorado, Appellee.
No. 95CA0816.
Colorado Court of Appeals, Div. III.
May 16, 1996.
As Modified on Denial of Rehearing June 13, 1996.[*]
Certiorari Granted January 13, 1997.
*1359 Brega & Winters, P.C., Ronald S. Loser, Brian A. Magoon, Denver, for Petitioner-Appellant.
Steven J. Zwick, County Attorney, Telluride, for Respondent-Appellee.
Gale A. Norton, Attorney General, Raymond T. Slaughter, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Mark W. Gerganoff, Assistant Attorney General, Denver, for Appellee.
Opinion by Judge NEY.
In this property tax case, we are required to determine if a taxpayer protest of a valuation by an assessor authorizes the assessor, and thus the Board of Assessment Appeals (BAA), to raise, as well as maintain or lower, the original valuation. We conclude that a taxpayer protest does not grant such authority and therefore reverse the order entered by the BAA.
Petitioner, the Telluride Company (taxpayer), appeals from that portion of an order of the BAA which denied its challenge to the valuation for the 1994 tax year of 645.20 acres of property designated as open space.
The following facts are not in dispute. Taxpayer is the owner of 24 noncontiguous parcels of property, totalling approximately 800 acres, within the Telluride Mountain Village Planned Unit Development.
For tax year 1993, a percentage of this property, unplatted and designated as open *1360 space, was valued by the San Miguel County Assessor (assessor) at $35,000 per acre. The taxpayer protested this valuation.
Prior to January 1, 1994, portions of the property subject to the 1993 valuation protest and additional property owned by taxpayer, all of which are the subject of this appeal, were platted in accordance with a development plan and designated as either "active" or "passive" open space. Active open space is property that may be developed for uses compatible with the resort nature of the mountain community, such as golfing and skiing. Passive open space is property that is limited to activities which are compatible with maintaining the property in its natural state, such as hiking and nature trails.
In May 1994, the assessor mailed taxpayer a notice of valuation for the tax year 1994 indicating that all of the property had been valued at $345 per acre. Taxpayer again protested the valuation.
While the protest of the 1994 valuation was pending before the assessor, the BAA issued an order concerning taxpayer's 1993 appeal (the 1993 decision) which directed the assessor to reduce the valuation of all property subject to that appeal from $35,000 to $17,500 per acre.
On June 27, 1994, the assessor mailed taxpayer a notice of determination for the 1994 tax year for the 24 parcels at issue here, assigning a value of $17,500 per acre for the 1994 tax year based upon the BAA's 1993 decision. Taxpayer appealed this increase in valuation to the County Board of Equalization (County) and, upon its denial, sought de novo review before the BAA.
The BAA concluded that the taxpayer had presented sufficient evidence to prove that the property had been incorrectly valued. It also concluded, however, that there was evidence to support a difference in values for property dedicated to active and passive open space. Thus, the BAA affirmed the $17,500 per acre value assigned by the assessor to the 645.20 acres dedicated to active open space. As to the portion dedicated to passive open space, it ordered the value reduced to the previous assessed valuation of $345 per acre.

I.
Taxpayer contends that the BAA erred, as a matter of law, in the manner in which it valued taxpayer's property dedicated to active open space. We agree.
The essence of taxpayer's argument is that the assessor erred in raising the 1994 valuation of its property after mailing a notice of valuation and during the protest period set forth in § 39-5-122, C.R.S. (1994 Repl.Vol. 16B). Hence, the BAA's valuation, inasmuch as it reflects this improper increase, is also erroneous.
Both parties rely on the statutory procedure set forth in § 39-5-122(2), C.R.S. (1994 Repl.Vol. 16B) which provides, in pertinent part:
If any person is of the opinion that his property has been valued too high, or has been twice valued, or is exempt by law from taxation, or that property has been erroneously assessed to him, he may appear before the assessor and object.... If the assessor finds any valuation to be erroneous or to be otherwise improper, he shall correct such error, but if he declines to change any valuation which he has determined, he shall state his reasons in writing .... (emphasis added)
Taxpayer argues that the basis for initiating a protest under this section is a taxpayer's belief that his or her property assessment is excessive, or that the property has been overvalued for any of the reasons set forth in the statute. Thus, the taxpayer construes the statute to mean that, in correcting erroneous or otherwise improper valuations asserted in a protest, the assessor may either affirm or lower the valuation of *1361 the property if, after considering the merits of the taxpayer's protest, the assessor agrees that the property has been overvalued.
In contrast, the County argues that the assessor's authority under the statute is independent of the asserted basis of the taxpayer' protest under § 39-5-122(2), and that the filing of a protest authorizes the assessor either to raise or lower the valuation.
We conclude that, in the context of the entire tax scheme, the phrase "if the assessor finds any valuation to be erroneous or otherwise improper, he shall correct such error" is subject to more than one interpretation.
If the language of a statute is unclear, a court's primary task is to ascertain and give effect to the object and purpose the General Assembly sought to obtain by its enactment. State Engineer v. Castle Meadows, Inc., 856 P.2d 496 (Colo.1993). If, as here, the enactment is part of a comprehensive legislative program, it is essential that in ascertaining the General Assembly's purpose, all enactments relating to the same subject matter be considered. Danielson v. Castle Meadows, Inc., 791 P.2d 1106 (Colo.1990).
Section 39-5-122(2) describes the first step in a series generally referred to as the "protest and adjustment" procedures. Board of Assessment Appeals v. Benbrook, 735 P.2d 860 (Colo.1987). Under these procedures, a taxpayer whose protest is refused or denied by the assessor may petition the County Board of Equalization for further review. Section 39-5-122(3), C.R.S. (1994 Repl.Vol. 16B). The County Board of Equalization may either grant or deny the petition in whole or in part. Section 39-8-107(1), C.R.S. (1994 Repl.Vol. 16B). If the County Board of Equalization grants the petition, the assessor must adjust the valuation of the taxpayer's property, but if the petition is granted only in part or is denied, the taxpayer may seek de novo review of the County Board of Equalization's decision before the BAA, the district court, or an arbitrator. Sections 39-8-107 through 39-8-108.5, C.R.S. (1994 Repl. Vol. 16B).
If the taxpayer prevails, the County Treasurer must pay him or her the appropriate refund. Section 39-8-109, C.R.S. (1994 Repl. Vol. 16B). If the taxpayer does not prevail, the valuation of the property cannot be adjusted higher than that set by the County. Section 39-8-108(5)(a), C.R.S. (1994 Repl.Vol. 16B). Moreover, the taxpayer may appeal the BAA or district court decision. Sections 39-8-108(2) and 39-8-108(3), C.R.S. (1994 Repl.Vol. 16B).
These enactments, we conclude, unmistakably reveal that the purpose of the protest and adjustment procedures is to establish a just and fair method by which a taxpayer may correct a valuation believed, for any number of reasons, to be excessive.
In particular, the language in §§ 39-5-122(2) and 39-5-122(3) restricting the assessor's decision against a taxpayer to the denial of the protest indicates legislative intent to limit the assessor's authority to affirming or reducing the valuation, as framed by the protest. See generally Black's Law Dictionary 436 (6th ed.1990) (to deny means to refuse to grant, to give a negative answer or reply to). This construction is reinforced by a similar limitation on the County, see § 39-8-108(1), C.R.S. (1994 Repl.Vol. 16B), and by a restriction on both the BAA and the district court not to value the property higher than determined by the County. See § 39-8-108(5)(a).
These provisions reveal a statutory scheme designed to create a taxpayer's right to challenge an overvaluation and to receive a review that is responsive to such a challenge. Having determined that the purpose of the protest and adjustment procedures is to provide the taxpayer with a just and fair remedy to correct a perceived overvaluation, we conclude that, under § 39-5-122(2), the assessor is authorized to correct erroneous or otherwise improper valuations by considering only errors in valuation raised in the taxpayer's protest, and under such circumstances, the assessor is authorized to lower, but not to raise, the valuation.
We are aware that the County's construction of the ambiguous phrase reflects *1362 the position taken by the Property Tax Administrator. See 2 Assessors Reference Library § V at 5.4 (rev.8-95). However, reviewing courts are not bound to follow the statutory interpretations of the Property Tax Administrator if, as here, the interpretation is inconsistent with the overall legislative scheme and the matter does not call for the exercise of the administrator's technical expertise. Huddleston v. Grand County Board of Equalization, 913 P.2d 15 (Colo. 1996); Board of Equalization v. M.D.C. Construction Co., 830 P.2d 975 (Colo.1992).
We also reject the county's remaining arguments concerning the assessor's alleged authority to increase the valuation of property during the protest period.
The County asserts that the lack of a designated ceiling on the adjusted value such as that imposed on the BAA, the district court, or this court pursuant to § 39-8-108(5)(a) indicates that the General Assembly did not intend to limit the assessor solely to lower valuations. However, this argument is inconsistent with the restrictive language contained in §§ 39-5-122(2), 39-5-122(3), and 39-5-122(5) (repeated use of the word "deny" or "decline" in reference to assessor's action taken with regard to a protest or objection).
Furthermore, we conclude that the County's reliance on § 39-8-102(1), C.R.S. (1994 Repl.Vol. 16B) is misplaced because that statute, which addresses the County's authority in performing its equalization function, is distinct from § 39-5-122(2), which involves the county's assessment function. See Wenner v. Board of Assessment Appeals, 866 P.2d 172 (Colo.App.1993).
Relying upon Modular Communities, Inc. v. McKnight, 191 Colo. 101, 550 P.2d 866 (1976) and Wenner v. Board of Assessment Appeals, supra, the County further argues that the assessor's decision to increase the valuation of the taxpayer's property during the protest period was not prejudicial because the taxpayer was able to appeal the valuation to the County and the BAA.
The County does not allege that the increases in the valuations here were corrections of clerical errors; therefore, the technical and procedural irregularities presented in the Modular Communities and Wenner cases are distinguishable from the substantive issue presented by the assessor's action here.
The County also argues that because the assessor's decision relates to the valuation of property during an intervening tax year, such change in valuation is authorized by § 39-1-103(15), C.R.S. (1994 Repl.Vol. 16B). Again, we disagree.
Section 39-1-103(15) provides, in pertinent part, that the assessor shall consider the value assigned the first year of the reassessment cycle, as adjusted after protests and appeals, if any, prior to the assessment date. We conclude, however, that this argument fails based upon the time limitation imposed by the assessment date. Pursuant to § 39-1-105, C.R.S. (1994 Repl.Vol. 16B), the assessment date is January 1 of the taxable year. Thus, the 1993 decision, issued in June 1994, was untimely in terms of the valuation of taxpayer's property for tax year 1994.
Based on our conclusion that § 39-5-122(2) does not authorize an assessor to raise the valuation of a taxpayer's property during the protest period, we further conclude that the $17,500 per acre valuation was error. And, inasmuch as the BAA's valuation of taxpayer's active open space property reflects this improper valuation, it too is error as a matter of law.

II.
In light of our construction of § 39-5-122(2), we need not address taxpayer's contention that the BAA erred as a matter of law in relying on the assessor's 1993 decision in valuing the property for tax year 1994.
The order of the BAA is reversed, and the cause is remanded to the BAA with directions to reduce the valuation of the 645.20 acres of property designated as active open space to $345 per acre for tax year 1994.
PLANK, J., concurs.
ROY, J., dissents.
*1363 Judge ROY dissenting.
I respectfully dissent.
This appeal involves the assessed valuation of 797.66 acres of open space land owned by the taxpayer and used in conjunction with the operation of a ski area and resort. The taxpayer protested the assessed valuation initially determined by the assessor at $345 an acre, or a total of approximately $278,000. In the course of that protest, the assessor increased the assessed value of taxpayer's property to $17,500 an acre, or to a total of $14,108,420. The County Board of Equalization, on appeal, affirmed the assessor. The Board of Assessment Appeals (BAA) affirmed the County Board of Equalization as to 645.2 acres at $17,500 an acre, or a total of about $11,291,000, and reduced the assessed value of 152.5 acres to $345, or a total of about $52,545, resulting in a total valuation of about $11,346,545. The protest resulted in a net increase in assessed valuation of $11,068,545.
The taxpayer asserts that the assessor cannot increase the assessed valuation after the assessor has issued the Notice of Valuation. The majority agrees with the taxpayer concluding that to permit the assessor to increase the valuation following the filing of a protest is contrary to the overall scheme and design of the property tax valuation and appeal procedures. I respectfully disagree and conclude that the contrary is true.
Article X, Section 3 of the Colorado Constitution requires that real property be assessed at "actual value." See also Colo. Const. art. X, § 20(8)(c) (requiring actual value to be stated on tax bills and notices). The Constitution further requires that the General Assembly cause yearly studies to be conducted to ascertain whether each county assessor has complied with the Constitution and statutes in valuing property and has determined the actual value for assessment of each class of taxable real and personal property. Colo. Const. art. X, § 3(2)(a).
The General Assembly requires that property be valued in two-year cycles commencing in 1989. Section 39-10-104(10.2), C.R.S. (1994 Repl.Vol. 16B). The tax year at issue here, 1994, is the second year of such a cycle.
It is the obligation of the county assessor to notify each taxpayer of the assessed value of each parcel of real property not later than May 15 of each calendar year. The taxpayer may then protest the assessed value by filing a written objection or protest with the county assessor on or before June 15. Here, the taxpayer, through its authorized agent, filed such a protest.
With respect to the authority of the assessor in the event of a protest, § 39-5-122(2), C.R.S. (1994 Repl.Vol. 16B) provides:
If any person is of the opinion that his property has been valued too high, or has been twice valued, or is exempt by law from taxation, or that property has been erroneously assessed to him, he may appear before the assessor and object.... If the assessor finds any valuation to be erroneous or otherwise improper, he shall correct such error, but if he declines to change any valuation which he has determined, he shall state his reasons in writing.... (emphasis added)
Absent a protest, the assessor has the power to correct errors at any time prior to the time the tax warrant is delivered to the treasurer. Section 39-5-125(2), C.R.S. (1994 Repl.Vol. 16B). This includes the correction of values. Modular Communities, Inc. v. McKnight, 191 Colo. 101, 550 P.2d 866 (1976).
If the assessor increases the value after the protest period has expired, and the taxpayer objects, there is an adequate post-deprivation remedy of abatement. Section 39-10-114, C.R.S. (1994 Repl.Vol. 16B). The majority's interpretation would terminate the authority given the assessor by § 39-5-125(2) in the event the taxpayer files a protest.
In my view, the meaning of "correct" is clear, that is, the assessor may raise or lower the assessed valuation. Further, to the extent the statute is ambiguous, I find ample support for my interpretation.
*1364 In this instance, there is reason to believe that the original assessment resulted from a clerical error. The assessor had valued the bulk of the property in the prior year at $35,000 an acre, and taxpayer appealed to the BAA. The appeal before the BAA was pending at the time the assessor issued the notice of valuation in dispute here. The BAA ultimately reduced the valuation to $17,500 an acre. It is unlikely that, in my view, an assessor would knowingly issue a Notice of Valuation at $345 an acre under these circumstances. The county, however, has not asserted a clerical error, and no finding in that regard was made below.
If, as here, a taxpayer is not satisfied by the final action of the assessor, the taxpayer may appeal to the County Board of Equalization pursuant to § 39-8-101, et seq., C.R.S. (1994 Repl.Vol. 16B). Section 39-5-122(3), C.R.S. (1994 Repl.Vol. 16B).
Article X, Section 15 of the Colorado Constitution states, in pertinent part:
(1)(a) There shall be in each county of the state a county board of equalization.... [T]he county boards of equalization shall raise, lower, adjust, and equalize valuations for assessment of taxes upon real and personal property located within their respective counties, subject to review and revision by the state board of equalization. (emphasis added)
The County Board of Equalization serves as both a board of equalization and a board of assessment appeals. The majority concludes that the authority of the County Board of Equalization to increase assessed valuation is limited to its equalization function. I disagree. Section 39-8-102(1), C.R.S. (1994 Repl.Vol. 16B) states:
The county board of equalization shall review the valuations for assessment of all taxable property appearing in the assessment roll of the county, directing the assessor to supply any omissions which may come to its attention. It shall correct any errors made by the assessor, and, whenever in its judgment justice and right so require, it shall raise, lower, or adjust any valuation for assessment appearing in the assessment roll to the end that all valuations for assessment of property are just and equalized within the county. (emphasis added)
In 1970, the General Assembly created the Division of Property Taxation in the Department of Local Affairs headed by the Property Tax Administrator. Section 39-2-101, C.R.S. (1994 Repl.Vol. 16B). The Property Tax Administrator is directed to prepare and publish manuals, appraisal procedures, and instructions concerning methods of appraisal all of which are binding on assessors. Huddleston v. Grand County Board of Equalization, 913 P.2d 15 (Colo.1996). The manual is subject to legislative review pursuant to the Administrative Procedure Act. Section 39-2-109(1)(e), C.R.S. (1994 Repl.Vol. 16B).
The manual presently provides:
The assessor shall correct erroneous or improper valuations. 39-5-122(2), C.R.S. Corrections that raise or lower the valuation may be made during protest period. By filing a protest, the taxpayer opens the door to all corrections. The taxpayer, as a matter of due process, always has the right to continue the appeal process until remedies are exhausted.
The General Assembly, in 1994, adopted extensive modifications to the statutes governing valuation of mining properties and adopted § 39-6-117, C.R.S. (1994 Repl.Vol. 16B), which states:
Nothing in this article shall be construed to affect the authority of county boards of equalization to raise, lower, or adjust any valuation for assessment appearing in the assessment roll as provided in section 39-8-102(1).
Following the decision by the County Board of Equalization, the taxpayer had three alternate routes of appeal: (1) the appropriate district court, (2) the BAA, and (3) binding arbitration. The taxpayer chose the second route.
In the event the taxpayer appeals to the district court or the BAA, appeal to the court *1365 of appeals is available. In the event the taxpayer appeals through binding arbitration, the decision of the arbitrator is final. Sections 39-8-108(2), 39-8-108(3), and 39-8-108(4), C.R.S. (1994 Repl.Vol. 16B). With the exception of review by the court of appeals, all appeals are trial de novo. Section 39-8-108(1), C.R.S. (1994 Repl.Vol. 16B).
With respect to appeals from and after the County Board of Equalization, § 39-8-108(5), C.R.S. (1994 Repl.Vol. 16B) provides as follows:
In any appeal authorized by this section or by section 39-10-114 [abatement of taxes]:
(a) The valuation for assessment shall not be adjusted to a value higher than the valuation for assessment set by the county board of equalization pursuant to section 39-8-107, except as specifically permitted pursuant to section 39-5-125 [correction of errors and omissions in assessment roll].
If, as the majority concludes, the assessor or the County Board of Equalization cannot increase the assessed valuation during the protest and appeal to the County Board of Equalization, then § 39-8-108(5)(a) is unnecessary. The adoption of § 39-8-108(5)(a) must have meaning.
Therefore, in my view, the assessor and the County Board of Equalization have the authority to increase the assessed valuation after the issuance of a notice of valuation following a protest filed by the taxpayer or on appeal to the County Board of Equalization. In addition, there is, in my view, ample evidence in the record to support the value ultimately determined by the assessor, approved by the County Board of Equalization, and affirmed by the BAA. Hence, I would affirm its order.
NOTES
[*] Roy, J., would GRANT.