**TELLURIDE COMPANY,**
Petitioner–Appellant,

v.

**SAN MIGUEL COUNTY BOARD OF EQUALIZATION, Respondent–Appellee,**

and

**Board of Assessment Appeals of the State of Colorado, Appellee.**

No. 95CA0816.

Colorado Court of Appeals,
Div. III.

Dec. 26, 1997.

Rehearing Denied Feb. 26, 1998.

Certiorari Denied Sept. 8, 1998.

Brega & Winters, P.C., Ronald S. Loser, Brian A. Magoon, Denver, for Petitioner–Appellant.

Steven J. Zwick, County Attorney, Telluride, for Respondent–Appellee.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Mark W. Gerganoff, Assistant Attorney General, Denver, for Appellee.

Opinion by Judge NEY.

In *Telluride Co. v. San Miguel County Board of Equalization,* 928 P.2d 1358 (Colo. App.1996), we determined that an assessor, absent an assertion of mistake, did not possess the authority, under § 39–5–122(2), C.R.S.1997, to raise a property valuation after a taxpayer had filed a protest challenging the original valuation of the subject property. As a result, we reversed an order of the Board of Assessment Appeals (BAA) which had substantially affirmed the San Miguel County Assessor's revised valuation of property owned by the Telluride Company (taxpayer). On certiorari review, the supreme court reversed, concluding that the language of § 39–5–122(2) unambiguously authorized the assessor to raise valuations during the protest procedure. It also remanded the matter to us for a determination of whether the taxpayer's active open space property was correctly valued for the 1994 tax year. *See San Miguel County Board of Equalization v. Telluride Co.,* 947 P.2d 1381 (Colo. 1997). On that remand, we determine that it was correctly valued and affirm.

The taxpayer owns twenty-four parcels of about 800 acres of non-contiguous land in Telluride Mountain Village dedicated to active and passive open space uses for ski trails, a golf course, an equestrian center, restaurants, employee and low income housing, offices, and maintenance facilities.

In 1993, all of the taxpayer's open space land was valued by the assessor at $35,000 per acre. The taxpayer protested this valuation under § 39–5–122(2), C.R.S.1997, a protest which was denied by both the assessor and the County Board of Equalization (CBOE).

The taxpayer then appealed to the BAA, and in June 1993, the BAA determined that the 1993 valuation was excessive and lowered it to $17,500 per acre. The taxpayer did not appeal further.

In May 1994, in the midst of the taxpayer's protest of the 1993 valuation, the assessor gave notice to the taxpayer that the taxpayer's active and passive open space land would be valued at $345 per acre for the 1994 tax year. The taxpayer protested this valuation.

In June 1994, the assessor gave notice that the valuation for active and open space property would instead be $17,500, as opposed to $345 per acre. The assessor based this change on the belief that, because it occurred in the second year in the assessment cycle, the valuation should reflect the BAA's determination regarding the 1993 assessment.

The taxpayer appealed the new valuation to the CBOE, which affirmed the assessor's determination. The taxpayer further appealed to the BAA, which affirmed the assessor's valuation of $17,500 for the active open space property, but reversed the valuation of the passive open space property.

The BAA determined that the assessor's passive open space valuation was incorrect because the use of this property was limited to activities which are compatible with maintaining the property in its natural state, such as hiking on nature trails, as opposed to the active open space, which may be, or is, developed for uses compatible with the resort nature of the mountain community, such as golfing and skiing.

The BAA ordered the CBOE to reduce the valuation of the taxpayer's passive open space property to $345 per acre, the valuation for similar open space property in the county. That order resulted in the appellate proceedings described above.

We now consider whether the assessor's valuation for the taxpayer's active open space was correct for the 1994 tax year.

### I.

In performing its 1994 valuation of the taxpayer's open space property, the assessor relied upon the 1993 valuation for the taxpayer's property. The taxpayer argues that the assessor, and later the BAA, erred in relying upon the 1993 valuation for the 1994 valuation because: (1) the assessor failed to document all elements of the three methods of valuation; and (2) the property taxed in 1993 and 1994 was not identical, but was substantially different in character and composition. We disagree.

The taxpayer argues that the assessor did not properly document all elements of the three approaches to appraisal pursuant to § 39–1–103(5)(a), C.R.S.1997. The assessor testified that, although all three approaches to value were considered, they were not all documented. The assessor did, however, document the most applicable approach for valuation of the taxpayer's property—the market approach.

▉ In *Montrose Properties, Ltd. v. Board of Assessment Appeals,* 738 P.2d 396 (Colo.App.1987), a division of this court held that § 39–1–103(5)(a) does not require the assessor to document approaches to value which are inapplicable to a given property. Here, the taxpayer's own expert testified at the BAA hearing that the cost and income approaches to value were not applicable to the subject property. Therefore, it is irrelevant that the assessor did not document the cost and income approaches to valuation.

### II.

The taxpayer argues additionally that because the taxable property in 1993 and 1994 was not identical, the 1993 valuation could

not be the basis for the 1994 property assessment. We disagree.

Citing § 39–1–103(15), C.R.S.1997, and several cases in which the taxable property adjudicated in the first year was identical to that adjudicated in the second year, including *Weingarten v. Board of Assessment Appeals*, 876 P.2d 118 (Colo.App.1994), the taxpayer asserts that the assessor and BOE could rely upon the 1993 valuation only if the *identical* taxable property was at issue in both tax years.

The holding in *Weingarten, supra*, permits the BAA to consider the value assigned to a property in the first year of a reassessment cycle as relevant evidence in assigning a value to the property in the subsequent intervening year. The taxpayer, however, argues that because the property in *Weingarten* and the other cited cases was the exact same property valued in the prior and later year, the instant case is distinguishable. Because some of the property was different in the prior 1993 valuation, taxpayer maintains that *Weingarten, supra*, does not apply.

 However, the relevant question here is not whether the same property was at issue in both years, but whether the BAA decision to uphold the valuation of $17,500 per acre in 1994 is supported by substantial competent evidence.

Here, the BAA found the value assigned (and not appealed) of $17,500 per acre for the taxpayer's active open space in 1993 to be substantial, competent, credible evidence as to the 1994 value of the taxpayer's active open space property. Although the properties were not identical in all respects, portions of the 1993 and 1994 properties were the same, and other portions of the 1994 property were substantially similar to the 1993 property. The assessor's testimony and evidence of valuation of comparable properties using the market approach support the valuation in 1994 as that for 1993.

Valuing similar property, similarly situated is consistent with statutory and constitutional mandates to achieve just and equalized values for purposes of taxation. *See* § 39–1–103(5)(b), C.R.S.1997; Colo. Const. art. X, § 3.

There was substantial competent and credible evidence presented to the BAA that the taxpayer's active open space for 1994 was similarly situated to the taxpayer's active open space for 1993 so that the 1994 active open space property could be valued the same, $17,500 per acre. Hence, that valuation is binding on review.

Order affirmed.

PLANK and ROY, JJ., concur.