2001 UT 37

**CIG EXPLORATION, INC., Plaintiff and Appellant,**

v.

**STATE of Utah and Richard J. Mitchell, Director, Department of Natural Resources, Division of State Lands and Forestry, Defendants and Appellees.**

No. 990412.

Supreme Court of Utah.

May 4, 2001.

Maxwell A. Miller, Douglas R. Davis, Salt Lake City, Debra K. Broussard, Houston, for plaintiffs.

Rodney G. Snow, Neil A. Kaplan, Anneli R. Smith, Salt Lake City, for defendants.

HOWE, Chief Justice:

¶ 1 Plaintiff CIG Exploration, Inc. (CIGE) appeals from the trial court's judgment that the statute of limitations contained in section 78–12–25(1) of the Utah Code barred recovery of royalties it allegedly overpaid defendant State of Utah.

## BACKGROUND

¶ 2 The material facts are undisputed. In the early 1970s, the Federal Power Commission (FPC) set specific wellhead prices that could be charged for natural gas. In 1973, CIGE and its parent company, Colorado Interstate Gas Company (CIG), entered into a settlement agreement with certain of CIG's customers providing that CIGE could charge CIG, and in turn CIG could charge its resale customers, higher prices than had previously been allowed by the FPC, provided the terms and conditions of the settlement agreement were met. The State of Utah was not a party to this agreement.[1]

¶ 3 In 1978, Congress enacted the Natural Gas Policy Act (NGPA), 15 U.S.C. § 3317 (1982), which sharply curtailed the FPC's authority to set specific wellhead prices and established general statutory ceiling prices for various categories of gas. The NGPA ceiling prices were substantially higher than the previous specific wellhead prices, but private parties were free to bargain for lower rates. In 1981, CIGE started charging CIG and CIG started charging its resale customers the higher prices, including the incentive "tight sands" prices under § 107 of the NGPA, *id.* at § 3317(c)(5), for gas produced from state property leased to CIGE.[2] CIGE paid royalties and taxes based on the higher § 107 revenues.

¶ 4 In 1982, some of CIG's resale customers challenged CIG's gas prices under the

---

1. See *Colorado Interstate Gas, et al.,* 44 FERC ¶ 61, 023 at p. 61, 080 (1988), for a detailed history of the background and terms of the 1973 agreement.

2. The NGPA permitted the higher pricing to provide incentive for natural gas exploration be-

cause of a gas shortage in the early 1970s. Section 107 "tight sands" pricing was higher because of the added cost of finding and mining natural gas in tight-sand formations. 15 U.S.C. § 3317(c)(5).

NGPA claiming that those prices violated the settlement agreement. *See Colorado Interstate Gas Co., et al.,* 32 FERC ¶ 63, 033, 1985 WL 68307 (1985).[3] The Federal Energy Regulatory Commission (FERC) ruled on July 24, 1985, that CIG had breached the 1973 agreement because CIG's resale customers had not consented to pay "tight sands" prices. *See generally id.* That decision was affirmed in part and reversed in part on July 7, 1988, by FERC opinion 306 wherein FERC found that § 107 incentive pricing could be allowed on a case-by-case basis upon a determination of the contracting parties' intent in interpreting the specific contracts. *See Colorado Interstate Gas Co.,* 44 FERC ¶ 61, 023, 1988 WL 245098 (opinion 306). FERC concluded, however, that while the settlement agreement allowed CIGE and CIG to charge certain NGPA prices, the agreement did not permit them to charge the higher "tight sands" prices under § 107 absent contract renegotiation with CIG's resale customers. *Id.* at pp. 61, 88–89. Finding that CIG had failed to reach a "negotiated contract price" with its resale customers to charge the "tight sands" prices, FERC ordered CIGE to refund the difference between the lower prices and the higher prices actually charged. *Id.* FERC denied rehearing on its decision on November 28, 1988. *Colorado Interstate Gas Co.,* 45 FERC ¶ 61, 293, 1988 WL 246595 (1988) (opinion 306A).

¶ 5 CIGE was a lessee of the State by assignment of mineral leases on State property located in the Natural Buttes Unit in Uintah County. These leases required CIGE to pay a royalty to the State based on a percentage of the "reasonable market value" at the well on all gas produced from the leased premises. The State received royalties based on § 107 "tight sands" pricing from CIGE and other producers in the Natural Buttes Unit during the relevant time period. It is undisputed that the State did not approve in whole or conditionally any contract for the sale of gas to third parties by CIG or CIGE.[4] None of the other producers have ever requested refunds based on FERC's disallowance of such incentive pricing. The last royalty payment at issue was received by the State in April 1985 for March 1985 production.

¶ 6 About three years after FERC issued opinion 306, CIGE brought this action against the State in July 1991 alleging that throughout the early 1980s CIGE "systematically overpaid royalties to the State." Two weeks earlier, it also filed a nearly identical action in the United States District Court for the District of Utah seeking reimbursement from certain overriding royalty interest owners. *CIG Exploration, Inc. v. Hill,* 824 F.Supp. 1532 (D.Utah 1993). The federal district court recognized a federal common law cause of action for equitable reimbursement, but granted summary judgment to the overriding royalty interest owners because CIGE's action was barred by the four-year statute of limitations in section 78–12–25(1) of the Utah Code. *Id.* That judgment was affirmed by the Court of Appeals for the Tenth Circuit. *See CIG Exploration, Inc. v. Tenneco Co.,* 83 F.3d 431, 1996 WL 194994 (10th Cir.1996). The court of appeals declined to address whether a federal common law claim existed, holding instead that any such claim, if it existed, would be time-barred. *Tenneco Co.,* 1996 WL 194994, n. 1, 1996 U.S.App. Lexis 9272, at 3, n. 1.

¶ 7 The instant action was stayed in the trial court pending the outcome of CIGE's appeal to the Tenth Circuit. After an adverse ruling by the court of appeals in *Tenneco,* CIGE stipulated in this action that collateral estoppel barred five of the six theories it had initially relied upon. However, CIGE asserted that its federal common law

---

3. The case originated in Colorado state court when the Public Service Co. of Colorado sued CIG for breaching the 1973 settlement agreement by charging higher prices under the NGPA than were permitted by the agreement. After the related FERC proceedings were instituted, the parties stipulated and agreed that FERC could hear and decide all issues because they agreed there was no conflict between applicable state law and the general contract principles applied

by FERC. *See Colorado Interstate Gas Co.,* 32 FERC ¶ 63, 033 at pp. 65, 104–108 (1985).

4. The leases provided that if the State approved such contracts the "reasonable market value" would then be the price at which the gas was sold, subject to the limitation that the price not be less than that received by the United States for comparable gas from the same field.

equitable claim for reimbursement should survive because the federal district court mistakenly applied section 78–12–25(1) to the federal equitable claim. On October 9, 1996, CIGE amended its complaint to add a claim for relief for breach of the implied covenant of good faith and fair dealing. The trial court did not reach judgment on the merits of CIGE's claims, but followed the federal district court and granted summary judgment for the State, holding that both of CIGE's claims were time-barred under section 78–12–25(1). CIGE appeals.

## ANALYSIS

¶ 8 While the parties have extensively briefed and argued the merits of the claims, we limit our review to whether the trial court accurately applied the statute of limitations to each claim. Although we must discuss the nature of CIGE's claims to determine the applicability of the statute of limitations, we do not undertake here to decide the merits of either claim. ·

## I. EQUITABLE REIMBURSEMENT UNDER FEDERAL COMMON LAW

■ ¶ 9 The trial court relied on section 78–12–25(1) to bar the equitable reimbursement claim. That section provides that

An action may be brought within four years:

   (1) upon a contract, obligation, or liability not founded upon an instrument in writing; ... provided, that action in all of the foregoing cases may be commenced at any time within four years after the last charge is made or the last payment is received.

Utah Code Ann. § 78–12–25(1) (1996).

¶ 10 In its amended complaint, CIGE pleaded: "Justice and fairness demand that CIGE have a cause of action under federal common law for reimbursement of the overcharges which were received by the State as royalty owner." Because CIGE's federal common law cause of action is based upon "justice and fairness," it sounds in equity and is not based on a written contract. Thus, we must apply the four-year statute of limitations in section 78–12–25(1). Claims falling within this limitation period are time-barred

"within four years after the last charge is made or the last payment is received." *Id.* CIGE made its last payment to the State in April 1985 and filed this action in July 1991 after the four-year period had lapsed.

■ ¶ 11 CIGE argues that the equitable principle of laches, not section 78–12–25(1), should apply to the federal equity claim. In support of this position, CIGE relies on *Louisiana Land & Exploration Co. v. Unocal Corp.*, 863 F.Supp. 306 (E.D.La.1994), where the federal district court held that a state statute of limitations did not apply to a federal common law claim for equitable restitution of a percentage of a settlement paid to the Department of Energy for overcharges of crude oil under various federal acts. However, that decision is inconsistent with the general rule that federal courts apply state statutes of limitations by analogy to like causes of action. *See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 355–56, 111 S.Ct. 2773, 2778, 115 L.Ed.2d 321, 331 (1991); *Pipkin v. USPS*, 951 F.2d 272, 274 (10th Cir.1991); *Shell v. Strong*, 151 F.2d 909, 911 (10th Cir.1945). Equitable claims will be barred after the time fixed by the analogous statute of limitations unless extraordinary circumstances make the application unjust. *See id.*

¶ 12 The federal district court addressed this same issue in *Hill*, determining that the equitable tolling doctrine did not shield CIGE from the reach of section 78–12–25(1). *See* 824 F.Supp. at 1548–49. The court reasoned that when several of CIG's resale customers sued for overpayment in 1982, CIGE was put on notice of questions regarding the legality of its use of tight sands prices. *See id.* at 1548. Nevertheless, CIGE continued to make royalty payments to royalty interest owners based on the "tight sands" prices until April 1985. On July 24, 1985, an administrative law judge ruled that CIG was not allowed to charge tight sands prices because CIG's resale customers had not consented to those prices. On July 7, 1988, FERC affirmed that CIG did not have authority to charge the "tight sands" prices. In 1989, the parties entered into a settlement, wherein CIG agreed to refund overcharges to its customers. FERC approved the 1989 settle-

ment on August 1, 1989, and that order became final on August 8, 1990.

¶ 13 The federal district court held that CIGE was on notice as early as 1982 of the challenge to the charging of the tight sands prices, yet declined to file this action until 1991. Given the ongoing litigation between CIG and its resale customers, there is no basis upon which to support the conclusion that CIGE should be allowed to file this action beyond the limitations period. CIGE's argument that it could not have sued Defendants prior to FERC's approval of the 1989 Settlement is wrong. The 1989 Settlement was an agreement between private parties and certainly did not create Defendants' liability to CIGE. Had CIGE brought suit at that time, and had Defendants filed a motion to dismiss for failure to state a claim upon which relief can be granted, Defendants' liability to CIGE would have been determined at that time.

*Hill,* 824 F.Supp. at 1548–49.

■ ¶ 14 We agree with the reasoning of the federal district court that section 78–12–25(1) applies to an equitable federal common law claim. Even if laches did apply, it would not aid CIGE, which had notice as early as 1982 of potential reimbursement claims. The doctrine of laches is "based upon [the] maxim that equity aids the vigilant and not those who slumber on their rights." *Black's Law Dictionary* 787 (6th ed.1990). Failure to file a claim until 1991, nine years after CIGE had notice of a potential claim and three years after FERC issued opinion 306, evidences a lack of vigilance in pursuing a claim. We hold that the limitation period in section 78–12–25(1) began to run in April 1985 upon CIGE's final payment to the State, and that the four years expired before July 1991 when this action was filed.

## II. BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

■ ¶ 15 The trial court also held that section 78–12–25(1) applied to CIGE's claim of a breach of an implied covenant of good faith and fair dealing because the "contract, obligation, or liability [was] not founded upon an instrument in writing." It further held that CIGE's last payment in April 1985 triggered the running of the statute, which ultimately barred recovery "four years after the last charge [was] made or the last payment [was] received." *Id.*

¶ 16 Although the record is unclear, the trial court seemingly relied largely on *Hill* in ruling that section 78–12–25(1) applied to both of CIGE's claims. In *Hill,* the court applied section 78–12–25(1) to a number of claims made by CIGE for reimbursement from royalty interest owners. *See generally CIG Exploration, Inc. v. Hill,* 824 F.Supp. 1532 (D.Utah 1993). Most of these claims were equitable and none of them were directly founded on the written contract.[5]

¶ 17 CIGE asserts that the State breached an implied duty of good faith and fair dealing based on the written lease between the parties when it refused to return allegedly overpaid royalties, and that the six-year statute of limitations prescribed by section 78–12–23(2) should apply. That section provides:

An action may be brought within six years:

. . . .

(2) upon any contract, obligation, or liability founded upon an instrument in writing. . . .

Utah Code Ann. § 78–12–23(2) (1996). CIGE contends that the alleged breach of the implied duty occurred at the earliest in 1988 when FERC opinion 306 was issued and at the latest when a final order was entered in July 1990.

■ ¶ 18 When parties enter into contractual relations, each party impliedly owes the other contracting parties a duty to act in good faith. *See, e.g., Rawson v. Conover,* 2001 UT 24, ¶ 44, 4 P.3d 1289 (explaining that " 'an implied covenant of good faith and

---

5. The federal district court applied section 78–12–25(1) to CIGE's claims for mistake, restitution, unjust enrichment, monies had and received, overpayment, and the federal common law claim for contribution. It is important to note that CIGE's separate claim for indemnification based on a clause in the written lease was not treated under the same statute, but was dismissed on other grounds. *Hill,* 824 F.Supp. at 1541–42.

fair dealing generally inheres to all contractual relationships'") (quoting *Malibu Inv. Co. v. Sparks,* 2000 UT 30, ¶9, 996 P.2d 1043); *Brown v. Moore,* 973 P.2d 950, 954 (Utah 1998) ("'Every contract is subject to an implied covenant of good faith'" (quoting *Brehany v. Nordstrom, Inc.,* 812 P.2d 49, 55 (Utah 1991))); *Berube v. Fashion Centre, Ltd.,* 771 P.2d 1033, 1046 (Utah 1989); *Beck v. Farmers Ins. Exch.,* 701 P.2d 795, 798 (Utah 1985). As we explained in *Brown,* "'[u]nder the covenant of good faith and fair dealing, each party impliedly promises that it will not intentionally or purposely do anything [that] will destroy or injure the other party's right to receive the fruits of the contract.'" 973 P.2d at 954 (quoting *St. Benedict's Dev. Co. v. St. Benedict's Hosp.,* 811 P.2d 194, 199 (Utah 1991)).

¶19 We have previously recognized that an implied covenant of good faith and fair dealing can derive from written natural resource leases. *Rio Algom Corp. v. Jimco Ltd.,* 618 P.2d 497, 505 (Utah 1980) (finding covenant of good faith in written uranium lease, we stated that "[i]t is fundamental that, whether expressed or not, every contract includes a covenant of good faith with respect to dealings between the parties"). The six-year statute of limitation in section 78–12–23(2) applies to a breach of the implied duty of good faith and fair dealing when the implied duty is founded on a written contract. *Valley Colour v. Beuchert Builders,* 944 P.2d 361, 364 (Utah 1997).

¶20 However, the more fundamental question, unaddressed by the trial court, is whether under a claim of breach of an implied covenant of good faith and fair dealing a party can recover overpayments. CIGE has not cited any cases that so hold. In our previous application of section 78–12–23(2), we have held that reimbursement claims are not founded on contractual rights unless expressly written in the contract. *See Brown v. Cleverly,* 93 Utah 54, 70 P.2d 881 (1937) (addressing real estate contract containing no provision for return of payments in case seller should default). We held in *Brown* that an action to recover the purchaser's payments was one in implied assumpsit as for monies had and received; consequently, the four-year limitation period applied rather than the six-year statute of limitations that is now numbered section 78–12–3(2). *See Brown,* 93 Utah at 63, 70 P.2d at 885; *see also McKean v. McBride,* 884 P.2d 1314 (Utah Ct.App.1994), *cert. denied,* 899 P.2d 1231 (Utah 1995) (holding that where a contract provided no remedy in the event of the sellers' default or refusal to perform, the buyer's right to recover money paid was not founded upon a written instrument, but rather upon an implied right to recover and, therefore, the four-year statute of limitations in section 78–12–25(1) applied).

¶21 We hold that CIGE's cause of action to recover the alleged excess royalty payments was for monies had and received and not for breach of the implied covenant of good faith and fair dealing. As such, CIGE was required to file suit within four years after the last payment was made in April 1985 pursuant to section 78–12–25(1). This holding works no injustice on CIGE. When opinion 306 was issued on July 7, 1988, CIGE still had nine months in which to bring this action before the four-year statute of limitations ran in April 1989. *See Atwood v. Sturm, Ruger & Co.,* 823 P.2d 1064 (Utah 1992) (holding that plaintiffs who were delayed in learning they had a cause of action had adequate time to file their actions before the statute of limitations expired);[6] *Brigham Young Univ. v. Paulsen Constr. Co.,* 744 P.2d 1370 (Utah 1987) (same).

¶22 Judgment affirmed.[7]

---

6. CIGE could have easily known of the exact price difference between § 107 prices and the prices ultimately imposed on CIGE. Gas prices were heavily regulated at the time, and it is likely CIGE knew the precise difference between the "tight sands" prices allowed by § 107 and the lower prices CIGE was required to charge if it failed to properly negotiate the price as required by the regulatory scheme.

7. Because the original claim is time-barred, we need not consider whether the claim of breach of implied covenant of good faith and fair dealing, filed in an amended complaint in October 1996, "relates back" to the original claim.

¶ 23 Associate Chief Justice RUSSON, Justices DURHAM, DURRANT, and WILKINS concur in Chief Justice HOWE's opinion.