2002 UT 75

**STATE of Utah, Department of Natural Resources, Division of Wildlife Resources, Plaintiff and Appellant,**

v.

**HUNTINGTON–CLEVELAND IRRIGATION CO., Defendant and Appellee.**

No. 20000413.

Supreme Court of Utah.

July 30, 2002.

Rehearing Denied July 30, 2002.

---

Mark L. Shurtleff, Att'y Gen., Michael M. Quealy, Norman K. Johnson, Martin B. Bushman, Asst. Att'ys Gen., Salt Lake City, for plaintiff.

J. Craig Smith, David B. Hartvigsen, Salt Lake City, for defendant.

RUSSON, Justice:

¶ 1 The Utah Department of Wildlife Resources ("DWR"), a shareholder in the Huntington-Cleveland Irrigation Company ("HCIC"), filed a complaint to challenge unequal share assessments levied by HCIC and the reduction of DWR's voting rights. The trial court dismissed the complaint, finding that the statute of limitations precluded the claims asserted therein. We reverse and remand.

## BACKGROUND

¶ 2 When determining whether a trial court properly dismissed an action, we accept the factual allegations in the complaint as true and consider them, and all reasonable inferences to be drawn from them, in the light most favorable to the nonmoving party. *See, e.g., Riddle v. Perry*, 2002 UT 10, ¶ 2, 40 P.3d 1128; *Clark v. Deloitte & Touche LLP*, 2001 UT 90, ¶ 2, 34 P.3d 209. We recite the facts accordingly.

¶ 3 HCIC, a Utah mutual nonprofit irrigation company, delivers water to its shareholders and charges each shareholder an annual assessment relating to the amount of water the shareholder receives from the HCIC canal system. DWR is an HCIC shareholder and uses HCIC water to cultivate crops that are not harvested but are left onsite for wildlife forage. This dispute arises out of the assessment of HCIC shares held by DWR.

¶ 4 In 1977, HCIC amended its articles of incorporation to permit unequal share assessments. The amended articles instructed the HCIC board of directors to consider the purpose of water use when making assessments.

¶ 5 Ten years later, in 1987, HCIC again amended its articles of incorporation. This amendment modified the rights of shareholders who used the water received under their shares for "municipal and industrial use." Under the amended articles, the voting rights of such shareholders were limited to voting only at HCIC's annual meeting to approve newly elected directors. The

amended articles also directed the board to levy an additional assessment on shares used for municipal and industrial purposes, increasing the assessment on those shares.

¶ 6 In January 1995, the HCIC board of directors adopted bylaws that defined the terms "irrigation use" and "municipal and industrial use" as used in the 1987 amended articles of incorporation. As defined in the bylaws, "irrigation use" means "water applied to land for crop or livestock-feed production purposes for pecuniary gain," and "municipal and industrial use" refers to all other uses not classified as "irrigation use."

¶ 7 As a result, in February 1995, HCIC informed DWR that it could no longer vote a portion of its shares at HCIC meetings for the election of officers because those shares had been reclassified as "municipal and industrial use" pursuant to the 1987 change in the articles of incorporation and the 1995 adoption of bylaws. DWR protested this reclassification. On October 11, 1995, DWR received the first annual assessment under the amended articles of incorporation and bylaws that reclassified some of DWR's shares as municipal and industrial shares ("M & I shares"), and left the remaining shares as irrigation shares. The shares reclassified as M & I shares were subject to the additional assessment and the reduced voting rights.

¶ 8 In 1996, HCIC reduced the number of DWR's shares it considered to be M & I shares. However, in 1999, HCIC reconsidered and determined that *all* of DWR's shares were M & I shares, subject to decreased voting rights and increased annual assessments, because DWR's crops irrigated by the HCIC canal system failed to meet the pecuniary gain requirement in order for DWR's water use to be classified as "irrigation use." From 1995 to 1998, DWR paid its annual assessment under protest. Ultimately, DWR filed a complaint on June 14, 1999, which it then amended on August 16, 1999, asking the trial court to hold that none of its shares should be classified as M & I shares. On September 3, 1999, HCIC moved to dismiss DWR's amended complaint under Utah

Rule of Civil Procedure 12(b)(6), arguing, inter alia, that the statute of limitations had run.

¶ 9 On April 20, 2000, the trial court dismissed DWR's complaint, concluding that the applicable statutes of limitation had expired. Specifically, the trial court found (1) that each of DWR's claims was based either upon an implied contract between DWR and HCIC or upon alleged violations of the Utah Code, and (2) that all contract and statutory violations occurred no later than February 1995. Accordingly, the trial court held that the four-year statute of limitations in section 78–12–25(1) of the Utah Code that applies to claims based upon an implied contract, as well as the three-year statute of limitations in section 78–12–26(4) that applies to liability predicated upon Utah statutes, precluded DWR from pursuing all of its causes of action.

¶ 10 DWR appeals the trial court's dismissal of its amended complaint. The primary issues on appeal are whether DWR's claims are barred by the statutes of limitation in sections 78–12–25(1) and 78–12–26(4) of the Utah Code.

### STANDARD OF REVIEW

¶ 11 The determination of whether the trial court properly concluded that the statute of limitations expired to bar DWR's action is a question of law that we review for correctness. *Quick Safe–T Hitch, Inc. v. RSB Sys. L.C.,* 2000 UT 84, ¶ 10, 12 P.3d 577; *see also State v. Lusk,* 2001 UT 102, ¶ 11, 37 P.3d 1103.

### ANALYSIS

### I. STATUTE OF LIMITATIONS

#### A. *Implied Contracts*

¶ 12 The resolution of whether the statute of limitations expired on DWR's implied contract claims depends upon when the four-year limitation period commenced. This determination hinges upon the construction of Utah Code section 78–12–25(1).[1] The trial

---

1. The relationship between a mutual irrigation corporation and its shareholders is contractual,

*see Badger v. Brooklyn Canal Co.,* 922 P.2d 745, 749–50 (Utah 1996); *Salt Lake City Corp. v. Ca-*

court determined that the four-year limitation period began running no later than February 1995 when HCIC informed DWR that it could no longer vote a portion of its shares under the January 1995 bylaws. The trial court's interpretation of this statute is a question of law that we review for correctness. *State ex rel. Div. of Forestry, Fire & State Lands v. Tooele County*, 2002 UT 8, ¶ 8, 44 P.3d 680.

 ¶ 13 In interpreting statutes, our paramount concern is to give effect to the legislative intent, manifested by the plain language of the statute. *State v. Lusk*, 2001 UT 102, ¶ 19, 37 P.3d 1103; *Regal Ins. Co. v. Bott*, 2001 UT 71, ¶ 10, 31 P.3d 524; *City of Hildale v. Cooke*, 2001 UT 56, ¶ 36, 28 P.3d 697. Unless a statute is ambiguous, we will not look beyond the plain language of the statute. *Lusk*, 2001 UT 102 at ¶ 19, 37 P.3d 1103. In doing so, we " 'presume that the legislature used each word advisedly and [we] give effect to the term according to its ordinary and accepted meaning,' " *C.T. v. Johnson*, 1999 UT 35, ¶ 9, 977 P.2d 479 (quoting *Nelson v. Salt Lake County*, 905 P.2d 872, 875 (Utah 1995)), and "we seek 'to render all parts [of the statute] relevant and meaningful,' " *Hall v. State Dep't of Corr.*, 2001 UT 34, ¶ 15, 24 P.3d 958 (quoting *Millett v. Clark Clinic Corp.*, 609 P.2d 934, 936 (Utah 1980)).

¶ 14 Unless otherwise provided, a civil action "may be commenced only within the periods prescribed in [chapter twelve of title seventy-eight], after the cause of action has accrued." Utah Code Ann. § 78–12–1 (1996); *see also Davidson Lumber Sales, Inc. v. Bonneville Inv., Inc.*, 794 P.2d 11, 19 (Utah 1990). The plain language of section 78–12–25(1) is unambiguous regarding when the four-year limitation period begins to run on implied contracts. That section provides:

An action may be brought within four years:

(1) *upon a contract, obligation, or liability not founded upon an instrument in writing;* also on an open account for goods, wares, and merchandise, and for any article charged on a store account; also on an open account for work, labor or services rendered, or materials furnished; provided, that action *in all of the foregoing cases may be commenced at any time within four years after the last charge is made or the last payment is received* ....

Utah Code Ann. § 78–12–25(1) (emphasis added).

 ¶ 15 The plain language unequivocally provides that an action "may be commenced at any time within four years after the last charge is made or the last payment is received" ("statute of limitations trigger phrase") in *all* of the situations listed in section 78–12–25(1), which are actions on an open account on goods, on an open account for work or services rendered, or "upon a contract, obligation, or liability not founded upon an instrument in writing." *Id.; see also CIG Exploration, Inc. v. State*, 2001 UT 37, ¶¶ 9–10, 24 P.3d 966. The legislature's use of the phrase "in all the foregoing cases" clearly indicates the legislature's intent that the statute of limitations trigger phrase apply to *all* cases explicitly enumerated in the statute, including implied contracts. Construing the statute otherwise would render the last phrase of the "statute superfluous or inoperative," contrary to Utah law. *Hall*, 2001 UT 34 at ¶ 15, 24 P.3d 958.

¶ 16 Moreover, this interpretation of section 78–12–25(1) comports with "[a]n application of 'elementary rules of punctuation and grammar.' " *State ex rel. Div. of Forestry, Fire & State Lands v. Tooele County*, 2002 UT 8, ¶ 13, 44 P.3d 680 (quoting *Newspaper*

hoon & Maxfield Irrigation Co., 879 P.2d 248, 252 (Utah 1994); *E. Jordan Irrigation Co. v. Morgan*, 860 P.2d 310, 314 (Utah 1993), "implied in a subscription for stock and construed by the provisions of a charter or articles of incorporation." *Jacobucci v. Dist. Court*, 189 Colo. 380, 541 P.2d 667, 671 (1975) (en banc). As such, the limitation period applicable to causes of action relating to this implied contract between an irrigation company and its shareholders is governed

by Utah Code section 78–12–25(1). *Davidson Lumber Sales, Inc. v. Bonneville Inv., Inc.*, 794 P.2d 11, 19 (Utah 1990); *Petty & Riddle, Inc. v. Lunt*, 104 Utah 130, 136–38, 138 P.2d 648, 651–52 (1942). Neither party disputes that all but one of the causes of action in this case are based upon implied contract and that, therefore, the statute of limitations of section 78–12–25(1) applies to those actions.

*Agency Corp. v. Auditing Div. of State Tax Comm'n*, 938 P.2d 266, 271 (Utah 1997)). In section 78–12–25(1), the punctuation, which we do not arbitrarily ignore, bolsters the construction of the statute that the limitation period commences either when the final charge is made or the final payment is received. *Id.* The first three phrases of the statute are uniformly separated by semicolons and the second and third phrases begin with the word "also." By so grammatically structuring the statute, the legislature divided the sentence into three distinct cases to which the statute of limitations trigger phrase expressly applies. *See id.; Newspaper Agency Corp.*, 938 P.2d at 271.

¶ 17 Further, the statute of limitations ordinarily will not begin to run on an action until it has accrued. *Davidson Lumber Sales*, 794 P.2d at 19. A cause of action for breach of contract for failure to make a payment, for deficient payment, or for overpayment accrues only after a charge is made or the payment is received, i.e., an action for overassessment accrues only after the relevant assessment has been made, and thus the limitation period begins to run when the payment is received or the charge is made. *See* Utah Code Ann. § 78–12–25(1); *see also CIG Exploration, Inc.*, 2001 UT 37 at ¶ 15, 24 P.3d 966 (holding that limitation period expired on plaintiff's claims to recover overpaid royalties because plaintiff's final payment to State was more than four years before action was commenced); *DOIT, Inc. v. Touche, Ross & Co.*, 926 P.2d 835, 843 (Utah 1996) ("As a general rule, a cause of action accrues when a plaintiff could have first filed and prosecuted an action to successful completion.").

¶ 18 Many "contract[s], obligation[s], or liabilit[ies] not founded upon an instrument in writing"—such as oral contracts, implied contracts, and quasi-contracts—require charges and payments to be made, many of which are made more than four years after the parties agree to such payments. If the statute of limitations precluded a party from pursuing a cause of action before it accrued, then parties could breach contracts with impunity once the statute of limitations had expired. Therefore, we have repeatedly held that all contracts covered by section 78–12–25(1) accrue when the last charge has been made or the last payment received. *CIG Exploration, Inc.*, 24 P.3d 966, 2001 UT 37 at ¶¶ 10 & 14; *Davidson Lumber Sales*, 794 P.2d at 19; *Petty & Riddle, Inc. v. Lunt*, 104 Utah 130, 138, 138 P.2d 648, 652 (1942); *see also CIG Exploration, Inc. v. Hill*, 824 F.Supp. 1532, 1546 (D.Utah 1993).

¶ 19 Here, whenever HCIC makes a new assessment under the purportedly unlawful mechanism,[2] a new cause of action accrues on that individual assessment, permitting the statute of limitations on the newly arisen cause of action to run from the date of the new assessment. Inasmuch as DWR alleges that HCIC's assessments were made pursuant to an unlawful mechanism, DWR can assail the assessments by challenging the mechanism upon which the assess-

---

**2.** DWR argues that the trial court fundamentally mischaracterized its first amended complaint by concluding that all of DWR's implied contract claims had accrued no later than February 1995, rather than a challenge to the assessments levied by HCIC. Conversely, HCIC, concurring with the trial court, stated that DWR implicitly conceded that all challenges to the amendments of the articles of incorporation or adoption of bylaws were barred by the statute of limitations and that DWR "attempts to argue a new, unpled theory—i.e., that [HCIC's] alleged wrongful conduct was not the amendments to [a]rticles or adoption of the [b]ylaws, but instead was the annual assessments of shareholders." In Utah a party is required only to "notice plead." *Fishbaugh v. Utah Power & Light*, 969 P.2d 403, 406 (Utah 1998). With this in mind, we review DWR's first amended complaint.

In this complaint, DWR sought declaratory judgment relating to "HCIC's actions in stripping DWR of voting rights and imposing higher assessments relating to property/stock ownership" and regarding how "the higher 'municipal and industrial' assessments do not reasonably, or 'equitably,' reflect any increased costs of water delivery." Further, DWR alleged in the complaint that HCIC breached its contract with DWR by "unilaterally amending its [b]ylaws and [a]rticles of [i]ncorporation after DWR's acquisition of shares to increase DWR's assessment costs." In addition, DWR sought injunctive relief and damages for "illegal assessments levied against it by HCIC," which DWR paid HCIC, and for which DWR requested the trial court to award DWR damages "to refund to DWR excess assessments paid." Accordingly, DWR's complaint challenged the assessments levied.

ments are based.[3] *See, e.g., Utah Ry. Co. v. State Tax Comm'n*, 2000 UT 49, ¶¶ 11–12, 5 P.3d 652; *Salt Lake City Corp. v. Prop. Tax Div. of State Tax Comm'n*, 1999 UT 41, ¶¶ 14 & 22, 979 P.2d 346; *Walker v. Brigham City*, 856 P.2d 347, 348–49 (Utah 1993).

¶ 20 However, DWR is still subject to the statute of limitations, which precludes actions that accrued more than four years before DWR filed this suit. Where, as here, a plaintiff brings suit to recover for overassessments, the statute of limitations runs against each assessment from the date the assessment is made, that is, from the date when an action may be brought on that particular assessment. *Greene v. Bursey*, 733 So.2d 1111, 1114 (Fla.Ct.App.1999). Hence, the limitation period may expire on some assessments but not on others. *Id.* Specifically, DWR cannot challenge every assessment made under the mechanism in perpetuity. As we have previously applied the limitation period of section 78–12–25(1), only payments due or assessments charged within the four years prior to filing the lawsuit can be the basis for a contractual claim. *See Morris v. Russell*, 120 Utah 545, 554, 236 P.2d 451, 456 (1951). DWR has only four years from the date of an assessment within which to challenge that particular assessment. The statute of limitations precludes DWR from challenging assessments made more than four years before this case was filed on June 14, 1999. *See id.* (holding that because services rendered were compensable monthly, limitation period would begin to run at end of each month on each individual monthly payment due). However, inasmuch as the first assessment in this suit challenged by DWR was made on October 11, 1995, the statute of limitations does not preclude any of the claims at issue in this case challenging purportedly unlawful assessments.

■ ¶ 21 Although the trial court found that HCIC informed DWR that a portion of its shares would be subject to reduced voting rights in February 1995, this fact does not preclude a challenge to particular assessments levied by HCIC. Therefore, the limitation period does not preclude DWR from recovering on any alleged overassessments should DWR prevail below on its implied contract claims.

¶ 22 In addition, the four-year statute of limitations commenced to preclude an action on particular shares with respect to DWR's claims of reduced voting rights when HCIC specifically reclassified those shares, thus effectively denying voting rights on those particular shares, because a cause of action for reduced voting rights accrues when those rights are effectively denied. HCIC notified DWR that some of DWR's shares would be subject to reduced voting rights in February 1995, although it is unclear from the record whether HCIC specifically notified DWR regarding which and how many shares would be reclassified and thus subject to the reduced voting rights. Accordingly, the four-year limitation period commenced on DWR's reduced voting rights claim either in February 1995 or on October 11, 1995, depending upon when HCIC *specifically* reclassified some of DWR's shares as M & I shares, which were subject to reduced voting rights. If HCIC specifically notified DWR regarding which shares were subject to reduced voting rights in February 1995, effectively reducing the voting rights on those shares from that time, then a cause of action on those particular shares would be time-barred. However, if the February notice was merely general and did not specifically reduce DWR's voting rights, then the statute of limitations would have expired on those voting rights claims stemming from the 1995 reclassification on October 11, 1999. With respect to the shares reclassified as M & I shares in 1999, the statute of limitations will not expire on those voting rights claims until 2003, and those claims are therefore not time-barred. We therefore remand to the trial court to deter-

---

3. Our holding should not be misconstrued to stand for the proposition that the mechanism may be attacked every time a new assessment is made contrary to our well-established doctrine of res judicata. Once the mechanism has been challenged and a final judgment has been rendered on the issue, whether the judgment vindi-

cated the plaintiff's position or not, res judicata precludes relitigation of the particular claim or issue. *E.g., Miller v. USAA Cas. Ins. Co.*, 2002 UT 6, ¶¶ 57–58, 44 P.3d 663; *Culbertson v. Bd. of County Comm'rs*, 2001 UT 108, ¶ 12, 44 P.3d 642; *Macris & Assocs., Inc. v. Neways, Inc.*, 2000 UT 93, ¶¶ 34–37, 16 P.3d 1214.

mine whether some of DWR's shares were reclassified in February or October 1995 so that it can be determined whether any cause of action with respect to reduced voting rights on those shares is precluded.

### B. Statutory Claims

¶ 23 In its amended complaint, DWR alleged that it suffered damages in the form of overassessments and reduced voting rights because HCIC violated sections 16–4–4, –7, and –24 by amending its articles of incorporation in 1977 and 1987, and by adopting new bylaws in 1995 to implement those amendments ("statutory claims"). However, in dismissing the action, the trial court also concluded that the three-year statute of limitations in section 78–12–26(4) barred DWR's statutory claims because this limitation period commenced no later than February 1995, more than three years before DWR filed its statutory claims. Section 78–12–26(4) states:

An action may be brought within three years:

. . .

(4) for a liability created by the statutes of this state, other than for a penalty or forfeiture under the laws of this state, except where in special cases a different limitation is prescribed by the statute of this state. . . .

Utah Code Ann. § 78–12–26(4) (1996).

¶ 24 The statute of limitations set forth in section 78–12–26(4) begins to run only after the cause of action based on Utah statute has accrued. *Id.* § 78–12–1; *see also Davidson Lumber Sales, Inc. v. Bonneville Inv., Inc.*, 794 P.2d 11, 19 (Utah 1990); *State Tax Comm'n v. Spanish Fork*, 99 Utah 177, 181, 100 P.2d 575, 577 (1940). Generally, a cause of action accrues when "it becomes remediable in the courts, that is when the claim is in such condition that the courts can proceed and give judgment if the claim is established." *Spanish Fork*, 99 Utah at 181,

100 P.2d at 577; *see also Hill v. Allred*, 2001 UT 16, ¶ 15, 28 P.3d 1271 ("In most circumstances, a cause of action accrues 'upon the happening of the last event necessary to complete the cause of action.'" (quoting *Myers v. McDonald*, 635 P.2d 84, 86 (Utah 1981))); *Retherford v. AT & T Communications of the Mountain States, Inc.*, 844 P.2d 949, 975 (Utah 1992) ("In order to determine when the limitation period began to run, then, we must determine when each of the causes of action became actionable by the courts."). Accordingly, the running of the statute of limitations is not triggered until all of the elements that must be proved at trial under the statute allegedly creating liability on the part of the defendant are existing and may be established. *See Davidson Lumber Sales*, 794 P.2d at 19; *see also Spears v. Warr*, 2002 UT 24, ¶ 33, 44 P.3d 742 (noting that statute of limitations will not run until all events necessary to complete cause of action have occurred). Thus, unless a statute otherwise provides, generally the plaintiff must have suffered damages before a cause of action accrues for statute of limitations purposes. *Seale v. Gowans*, 923 P.2d 1361, 1364 (Utah 1996); *Williams v. Indus. Comm'n of Utah*, 95 Utah 376, 378, 81 P.2d 649, 649 (1938); *Salt Lake City v. Indus. Comm'n*, 93 Utah 510, 513–14, 74 P.2d 657, 659 (1937);[4] *see also Monsanto Co. v. Miller*, 455 N.E.2d 392, 394 (Ind.Ct.App.1983); *Luick v. Rademacher*, 129 Mich.App. 803, 342 N.W.2d 617, 618 (1983); *Elmore v. Owens–Illinois, Inc.*, 673 S.W.2d 434, 436 (Mo. 1984) (en banc); *Snyder v. Town Insulation, Inc.*, 81 N.Y.2d 429, 599 N.Y.S.2d 515, 615 N.E.2d 999, 1000 (1993); *Children's Hosp. v. Ohio Dep't of Pub. Welfare*, 69 Ohio St.2d 523, 433 N.E.2d 187, 190 (1982); *Osborn Co. v. Ohio Dep't of Admin. Servs.*, 80 Ohio App.3d 205, 608 N.E.2d 1149, 1150 (1992); *Young v. Young*, 709 P.2d 1254, 1258 (Wyo. 1985); 51 Am.Jur.2d *Limitation of Actions*

---

**4.** For a period of time, *Williams*, 95 Utah 376, 81 P.2d 649, and *Salt Lake City*, 93 Utah 510, 74 P.2d 657, were superseded by a specific statutory limitation period directly applicable to workers' compensation cases, as noted by *McKee v. Industrial Commission*, 115 Utah 550, 554, 206 P.2d 715, 717 (1949). However, in 1990, that statute was repealed. S.B. 35, 48th Leg., Gen. Sess.,

1990 Utah Laws 69. Nevertheless, despite the specific statutory history involved in these cases, the general analysis we employed with respect to when the limitation period of section 78–12–26(4) commenced running was never in doubt, and we are not hesitant to rely upon that analysis here.

§ 109 (1970); *cf. Spears,* 2002 UT 24 at ¶ 32, 44 P.3d 742 (noting that limitation period and discovery rule involve determination of "the point at which a person reasonably should know that he or she *has suffered a legal injury* " (emphasis added)).

¶ 25 In this case, until damages were sustained, DWR's statutory claims under title 16 of the Utah Code remained inchoate and would not have accrued, and the limitation period was not triggered. *See Seale,* 923 P.2d at 1364. Therefore, the three-year statute of limitations did not commence until each wrong occurred.

¶ 26 On every purportedly illegal assessment, HCIC could have violated the statute anew, giving rise to new liability. Consequently, the statute of limitations began to run on each assessment or denial of voting rights from the date of each individual assessment or denial of voting rights. Therefore, DWR can raise only the statutory claims to assail assessments or reduced voting rights for the three-year period immediately before DWR filed this action on June 14, 1999. Accordingly, DWR can recover only on statutory claims since June 14, 1996.

## CONCLUSION

¶ 27 In light of the foregoing, we reverse and remand to the trial court for proceedings consistent with this opinion.

¶ 28 Chief Justice DURHAM, Associate Chief Justice DURRANT, and Justice HOWE concur in Justice RUSSON'S opinion.

¶ 29 Justice WILKINS dissents.