2002 UT 94

WILSON SUPPLY, INC., dba Pro Power Equipment Co., Plaintiff and Appellee,

v.

FRADAN MANUFACTURING CORP., Defendant and Appellant.

No. 20001035.

Supreme Court of Utah.

Sept. 6, 2002.

---

David L. Bird, Gregory J. Adams, Salt Lake City, for plaintiff.

Frank D. Mylar, Salt Lake City, for defendant.

RUSSON, Justice:

¶ 1 Fradan Manufacturing Corporation ("Fradan") appeals the trial court's judgment in favor of Wilson Supply, Inc. ("Wilson Supply"). We affirm.

## BACKGROUND

¶ 2 From approximately September 1996 to November 1997, Fradan supplied Wilson Supply "d.b.a." Pro Power Equipment Company ("Pro Power")[1] with various yard and garden equipment products, and attendant repair parts ("Fradan inventory") for retail sale to consumers and end users. The agreement between Wilson Supply and Fradan was unwritten.

¶ 3 In or around October 1997, Wilson Supply notified Fradan that Wilson Supply was terminating its agreement to retail Fradan's products and parts and requested that Fradan repurchase Wilson Supply's unsold Fradan inventory pursuant to Fradan's statutory obligation to do so as set forth in section 13–14a–2 of the Utah Code, the Utah "Equipment Repurchase from Retail Dealers" or "buy-back" statute. *See* Utah Code Ann. §§ 13–14a–1 to –9 (1999). Fradan re-

---

1. Wilson Supply conducted its retail business under the name Pro Power Equipment Company. The abbreviated appellation "d.b.a." stands for "doing business as" and is a designation contemplated and permitted by statute, *see* Utah Code Ann. §§ 42–2–5 to –11 (1998 & Supp.2001), indicating a business entity conducting its business in a name different from the name under which it is incorporated, registered, or otherwise known.

At the evidentiary hearing held in connection with this case, the parties stipulated that Wilson Supply and Pro Power were one and the same business entity, not separate and distinct entities. The trial court uses both appellations interchangeably; in our analysis here, references to Wilson Supply mean Wilson Supply "d.b.a." Pro Power, and we consider them to be the same entity.

fused to repurchase Wilson Supply's unsold Fradan inventory.

## PROCEDURAL HISTORY

¶ 4 On December 3, 1998, Wilson Supply brought suit to compel Fradan's compliance with its statutory obligations under the buy-back statute. Wilson Supply did not request a jury trial.

¶ 5 In response to a discovery dispute, on November 12, 1999, Fradan moved the trial court for a protective order aimed at protecting certain of Fradan's pricing information. In February 2000, both Wilson Supply and Fradan moved for summary judgment. On March 24, 2000, the trial court held a hearing on the cross-motions for summary judgment and Fradan's outstanding motion for a protective order. The trial court heard oral argument on these motions but reached no conclusion and made no ruling. According to a minute entry dated August 3, 2000, the trial court notified Wilson Supply and Fradan of the trial court's sua sponte scheduling of an evidentiary hearing on the issue of whether Wilson Supply was a dealer or a wholesaler for purposes of the buy-back statute.

¶ 6 On September 19, 2000, the evidentiary hearing was held. Wilson Supply and Fradan were present and represented by counsel, and the trial court allowed each side to present evidence and to examine and cross-examine witnesses. Brett Wilson and Scott Wilson, president and vice president of Wilson Supply, respectively, and Frank Debartolo, president of Fradan, testified. At the conclusion of the oral testimony, the trial court made oral findings of fact on the record and concluded as a matter of law that Wilson Supply was a dealer under the buy-back statute and that the statute obligated Fradan to repurchase Wilson Supply's unsold Fradan inventory. The trial court instructed Wilson Supply to prepare an order and judgment consistent with the trial court's ruling. Fradan made no procedural objections at the conclusion of the evidentiary hearing and

submitted objections only to the form of the proposed order and judgment. On October 31, 2000, the trial court entered its order and judgment in favor of Wilson Supply. Fradan timely appealed.

¶ 7 On appeal, Fradan argues that the trial court misinterpreted and misapplied the buy-back statute in determining that Wilson Supply was a dealer for purposes of the statute, obligating Fradan to repurchase Wilson Supply's unsold Fradan inventory. In addition, Fradan argues that, to the extent the trial court found facts based upon the oral testimony received at the evidentiary hearing on the cross-motions for summary judgment and relied upon those findings of fact in reaching its legal conclusions, the trial court's findings of fact were clearly erroneous and not supported by sufficient evidence. Fradan also argues that because Wilson Supply sold its Pro Power retail outlets during the pendency of the action, Wilson Supply no longer has the right to assert its repurchase rights under the buy-back statute. Finally, Fradan argues that the trial court's findings of fact, conclusions of law, and grant of judgment against Fradan were retributive and punitive, stemming from the trial court's "hostility and anger" toward Fradan regarding the parties' underlying discovery dispute and Fradan's motion for a protective order.[2]

¶ 8 Wilson Supply counters that the trial court's findings of fact were supported by sufficient evidence and that the trial court correctly interpreted and applied the buy-back statute. Wilson Supply also denies Fradan's allegations that the trial court was motivated in its ruling by bias or animosity against Fradan or that Wilson Supply attempted to capitalize on any "home-state bias" from the trial court.

## STANDARD OF REVIEW

¶ 9 This case was before the trial court on cross-motions for summary judgment. However, instead of ruling on the motions, the trial court set the matter for an

---

2. The trial court never ruled on Fradan's motion for a protective order in connection with certain of its pricing information, and the parties appear to have agreed in the proceedings below that resolution of the motions for summary judgment would obviate the need to resolve the motion for a protective order.

evidentiary hearing on the dispositive issue of whether Wilson Supply was a dealer or a wholesaler. At the hearing, both parties called and cross-examined witnesses. The trial court then made oral findings of fact and concluded as a matter of law that Wilson Supply was a dealer. The evidentiary hearing was essentially a trial on the merits of the dispositive issue and should be treated as such. *See Tripp v. May,* 189 F.2d 198, 200 (7th Cir.1951); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil* § 2720 (3d ed. 1998) ("[W]hen the [trial] court is ruling on cross-motions [for summary judgment], [and] the facts ... become fully developed at the hearing on the motions[,] ... in a nonjury case the court may proceed to decide the factual issues and render a judgment on the merits without any further delay if it is clear that there is nothing else to be offered by the parties and there is no prejudice in proceeding in this fashion.... [T]his procedure amounts to a trial of the action and technically is not a disposition by summary judgment.").

¶ 10 The events of the evidentiary hearing, including the parties' presentation and cross-examination of witnesses and the trial court's entry of findings of fact and conclusions of law, essentially and practically amount to a trial on the merits of the case. The parties' conduct subsequent to the proceeding below also supports this conclusion. Fradan made no objection at the close of the evidentiary hearing to the trial court's entry of findings of fact and conclusions of law or the procedural course of the case at that juncture. Wilson Supply argues in its briefs and at oral argument before this court that the evidentiary hearing was a trial and should be treated as such for purposes of appellate review. Finally, on appeal, Fradan, at least in the alternative, appears to view the proceedings below as a trial by challenging the sufficiency of the evidence to support the trial court's findings of fact. Therefore, we treat this case as if it had come before us for review after a bench trial on the merits, and we review it accordingly.

¶ 11 "Generally, we review a trial court's legal conclusions for correctness, according the trial court no particular deference." *Orton v. Carter,* 970 P.2d 1254, 1256 (Utah 1998); *see also Newspaper Agency Corp. v. Auditing Div. of State Tax Comm'n,* 938 P.2d 266, 267 (Utah 1997). Specifically, whether the trial court properly interpreted and applied the Utah buy-back statute in this case is a question of law that we review for correctness. *See State Dep't of Natural Res. v. Huntington–Cleveland Irrigation Co.,* 2002 UT 75, ¶ 12, 52 P.3d 1257; *State ex rel. Div. of Forestry, Fire & State Lands v. Tooele County,* 2002 UT 8, ¶ 8, 44 P.3d 680.

¶ 12 We review a trial court's findings of fact according to the standard set out in Utah Rule of Civil Procedure 52(a), which provides: "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." *Id.; see also Orton,* 970 P.2d at 1256–57; *Consolidation Coal Co. v. Div. of State Lands & Forestry,* 886 P.2d 514, 522 (Utah 1994); *Reid v. Mut. of Omaha Ins. Co.,* 776 P.2d 896, 899 (Utah 1989). "A trial court's factual finding is deemed 'clearly erroneous' only if it is against the clear weight of the evidence." *Doelle v. Bradley,* 784 P.2d 1176, 1178 (Utah 1989); *see also Willard Pease Oil & Gas Co. v. Pioneer Oil & Gas Co.,* 899 P.2d 766, 773 (Utah 1995); *Reid,* 776 P.2d at 899–900.

## ANALYSIS

### I. STATUTORY INTERPRETATION

¶ 13 Fradan first argues that the trial court erred in concluding as a matter of law that Wilson Supply was a dealer as defined by the buy-back statute and therefore was entitled to the benefit of the manufacturer repurchase requirement of the statute. Fradan contends that, inasmuch as Wilson Supply sold certain of its inventory, allegedly including some of its Fradan inventory, at wholesale, it was a wholesaler as defined by the buy-back statute and therefore precluded from relying on the manufacturer repurchase provisions of the buy-back statute since those provisions apply solely to dealers, not to wholesalers. Essentially, Fradan argues

that the buy-back statute should be interpreted such that only business entities conducting business exclusively as dealers are entitled to the benefits of the repurchase provisions of the statute. In other words, according to Fradan's interpretation of the statute, because Wilson Supply sold some of its inventory at wholesale even though Wilson Supply sold its Fradan inventory at retail through its Pro Power stores, it is disqualified from the benefits of the repurchase provisions because those provisions of the buy-back statute apply only to dealers who never sell at wholesale. We disagree with Fradan's interpretation of the buy-back statute and find no error in the trial court's interpretation and application of the statute.

▋ ¶ 14 "When interpreting statutes, we determine the statute's meaning by first looking to the statute's plain language, and give effect to the plain language unless the language is ambiguous." *Blackner v. State Dep't of Transp.*, 2002 UT 44, ¶ 12, 48 P.3d 949; *see also State Dep't of Natural Res. v. Huntington–Cleveland Irrigation Co.*, 2002 UT 75, ¶ 13, 52 P.3d 1257.

¶ 15 The Utah buy-back statute provides in pertinent part:

> Upon termination of all sales agreements in which the dealer has agreed to offer the products of the manufacturer or wholesaler for retail sale and to stock wholegoods and parts inventories as may or may not be required by the manufacturer or wholesaler, the retailer is entitled to payment or credit from the manufacturer or wholesaler for all new and unsold wholegoods and parts inventories held by the dealer on the date the agreement was terminated.

Utah Code Ann. § 13–14a–2(1) (1999).

¶ 16 In this same chapter, the Utah Code defines "dealer" as "any person, firm, or corporation engaged in the business of selling and retailing farm equipment, implements, utility and light industrial equipment, attachments, or repair parts, and includes retailers of yard and garden equipment not primarily engaged in the farm equipment business." *Id.* § 13–14a–1(1)(a). The statute explicitly excludes from the definition of dealer "(i) a person who is engaged in the business of sales and service of heavy industrial or construction equipment; or (ii) a person, firm, or corporation who serves as the dealer for a membership group purchasing program." *Id.* § 13–14a–1(1)(b).

▋ ¶ 17 Fradan's interpretation of the statute is not supported by the plain language of the statute. According to the statute's terms, dealers are entitled to the benefit of the repurchase provision. The statute clearly defines dealers as those business entities engaged in the business of selling and retailing certain equipment, including retailers of yard and garden equipment. The statutory definition in no way limits the definition of dealer to exclude a business entity that sells at retail *and* at wholesale. The legislature was clearly capable of crafting specific exclusions to the definition of dealer as it did in subsection 13–14a–1(1)(b). Had the legislature intended to exclude business entities that engage in both retail and wholesale selling as Fradan suggests, it could have specified that dealer means only those business entities that engage exclusively in the business of retailing. It did not do so.

¶ 18 Therefore, the relevant inquiry in this case is whether Wilson Supply "engaged in the business of selling and retailing . . . yard and garden equipment." *Id.* § 13–14a–1(1)(a). When the facts of the case are applied to the plain language of the statute, it is clear that Wilson Supply is entitled to the benefits of the manufacturer repurchase provision of the buy-back statute. In the words of the statute,

> Upon termination of all sales agreements in which the dealer [Wilson Supply "d.b.a." Pro Power] has agreed to offer the products of the manufacturer or wholesaler for retail sale and to stock wholegoods and parts inventories as may or may not be required by the manufacturer [Fradan] or wholesaler [not applicable here], the retailer [Wilson Supply "d.b.a." Pro Power] is entitled to payment or credit from the manufacturer [Fradan] or wholesaler [not applicable here] for all new and unsold wholegoods and parts inventories held by the dealer [Wilson Supply "d.b.a." Pro

Power] on the date the agreement was terminated.

*Id.* § 13–14a–2(1).

¶ 19 The trial court did not err in concluding, based upon the findings of fact, that Wilson Supply was a dealer under the statute and therefore that Fradan was obligated to repurchase Wilson Supply's unsold Fradan inventory.

¶ 20 Finally, Fradan argues that because Wilson Supply sold its retail stores during the pendency of the litigation, it forfeited its repurchase rights under the buyback statute. Fradan's argument is unavailing. The plain language of the statute provides that the benefit of compulsory repurchase is effective "[u]pon termination of all sales agreements" and that the dealer is "entitled to payment or credit from the manufacturer ... on the date the agreement was terminated." *Id.* § 13–14a–2(1). In this case, the sales agreement between Wilson Supply and Fradan was terminated in October 1997. At that time, Wilson Supply's right accrued under the buy-back statute. Wilson Supply's subsequent sale of its retail stores, or any other of its assets other than the unsold Fradan inventory, has no bearing on Wilson Supply's payment and credit rights under the statute.

## II. SUFFICIENCY OF THE EVIDENCE

¶ 21 Fradan argues that the trial court's factual findings are " 'clearly erroneous' and based upon an apparent hostility towards FRADAN that was in turn based upon the court's misunderstanding of a discovery dispute." To mount a successful attack upon a trial court's findings of fact, an appellant must first marshal all the evidence in support of the finding and then demonstrate that the evidence is legally insufficient to support the finding even when viewing it in a light most favorable to the court below. *Willard Pease Oil & Gas Co. v. Pioneer Oil & Gas Co.,* 899 P.2d 766, 773 (Utah 1995); *see also Consolidation Coal v. Div. of State Lands & Forestry,* 886 P.2d 514, 522 (Utah 1994); *Doelle v. Bradley,* 784 P.2d 1176, 1178 (Utah 1989); *Reid v. Mut. of Omaha Ins. Co.,* 776 P.2d 896, 899 (Utah 1989). In other words, an appellant who challenges the sufficiency of the evidence supporting a finding of fact has the burden of combing the record for and compiling all of the evidence that supports the finding of fact and explaining why that evidence is legally insufficient to support the finding of fact.

¶ 22 An appellant fails to meet its marshaling burden if it merely restates or reviews the evidence that supports an alternate finding or a finding contrary to the trial court's established finding of fact. In some instances, as in this case, an appellant, in attempting to meet its marshaling burden, also might assert that the record does not contain any evidence in support of a particular finding of fact. Under such circumstances, the heavy burden of marshaling all of the evidence in support of the finding of fact does not shift to the appellee in order to refute the appellant's assertion of the absence of evidence. Rather, the appellee, when confronted with such a "no evidence" sufficiency challenge, need only point to a scintilla of credible evidence from the record that supports the finding of fact in order to overcome the appellant's "no evidence" assertion and to demonstrate that the appellant has failed to meet its marshaling burden.

¶ 23 Initially, throughout Fradan's challenge to the trial court's findings of fact, Fradan continually repeats its allegation that "all of [the] findings are the result of an unjust, punitive, and abusive action taking [sic] by the trial court based upon an unlitigated discovery dispute." Despite its repetition of this assertion, Fradan does not point to any evidence in the record or elsewhere indicating that Fradan's assertion of bias or retributive motivation on the part of the trial court is anything but a conclusory allegation. Such a bald assertion, without more, does not mount a compelling challenge to the correctness of the trial court's findings of fact or constrain us to reverse those findings.

¶ 24 In its attempt to meet its marshaling burden, Fradan restates what it characterizes as the trial court's "hasty and cryptic" findings of fact. While we agree that the trial court's findings of fact are not a model of clarity, they are sufficiently clear for us to

review. After restating the trial court's findings of fact, Fradan then proceeds to challenge the sufficiency of the evidence underlying certain of those findings.

¶ 25 Instead of reviewing every challenged finding of fact, some of which are wholly irrelevant given our interpretation and application of the buy-back statute,[3] *see supra* part I, we limit our review to only the material, determinative findings of fact.

¶ 26 As to the material findings of fact, Fradan has not met its "heavy burden of marshaling." *Consolidation Coal*, 886 P.2d at 522. In its memoranda of law, Fradan does not set forth evidence in support of the trial court's findings; rather, Fradan merely cites to portions of the testimony that favor its position or argues that there is no evidence to support the trial court's finding. Fradan's "failure to marshal the evidence and demonstrate that the trial court's findings were clearly erroneous in light of the evidence allows us to affirm the court's findings on that basis alone." *State v. Widdison*, 2001 UT 60, ¶ 61, 28 P.3d 1278. In any event, the trial court's material findings of fact are supported by sufficient evidence.

¶ 27 The trial court found that "the initial business relationship that was created with [Wilson Supply "d.b.a."] Pro Power was intended to be a manufacturer to a retailer direct." Fradan points to certain evidence in the record supporting the finding and argues that it is "far too slim for the court to make the leap of faith that FRADAN contracted directly with each separate retail outlet."[4] Fradan, however, ignores the testimony of Wilson Supply's president Brett Wilson that (1) Fradan's sales manager first approached Brett Wilson at Wilson Supply's Pro Power retail store in Murray, Utah, (2) Brett Wilson at that time explained to Fradan's sales manager that Wilson Supply wanted to retail Fradan's products through its retail stores, and (3) Brett Wilson and Fradan's sales manager orally agreed at that time that Wilson Supply would sell Fradan's products at retail. This testimony is sufficient to support the trial court's finding.

¶ 28 The trial court also found that "Fradan's product was marketed by [Wilson Supply 'd.b.a.'] Pro Power at retail" and that "all of the sales that were engaged in by [Wilson Supply 'd.b.a.'] Pro Power Equipment were retail final sales to ultimate users." Fradan challenges this finding of fact only to the extent it implies that Fradan dealt directly with the three Pro Power retail stores, not with Wilson Supply. It does not deny that there is sufficient evidence to support the trial court's conclusion that Pro Power retailed Fradan's product. Fradan instead argues that the trial court did not find that Wilson Supply retailed Fradan's products and that there was no evidence in the record to support such a finding in any event. Again, Fradan's argument fails because Wilson Supply and Pro Power were the same entity. Therefore, the trial court's finding that Pro Power retailed Fradan's products also means it had found that Wilson Supply

---

3. Several of the trial court's findings of fact are not relevant or material to the proper application of the buy-back statute and the trial court's ultimate determination that Fradan was obligated to repurchase Wilson Supply's unsold Fradan inventory pursuant to the buy-back statute. For example, Fradan asserts that the trial court's "references to Cantrell being the wholesaler to WILSON SUPPLY are not supported by any evidence in the record." Fradan later admits that such a finding is "immaterial." The fact that another business entity, e.g., Cantrell, was selling Fradan's products at wholesale is irrelevant and immaterial to the issue or question of whether Wilson Supply sold Fradan's products at retail and whether consequently Wilson Supply is entitled to rely on the repurchase provision of the buy-back statute. Because such a finding of fact is not a material fact, it is irrelevant whether that finding is clearly erroneous.

4. In challenging this particular finding of fact, and throughout its arguments on appeal, Fradan apparently loses sight of the fact that Wilson Supply and Pro Power are one and the same business entity. A common refrain throughout Fradan's challenge to the sufficiency of the evidence in support of the trial court's finding of fact is the assertion that while there may be evidence supporting particular findings regarding Pro Power, there is no evidence supporting that same finding with regard to Wilson Supply. As we have previously explained, the fact that Wilson Supply and Pro Power are one and the same business entity was stipulated to by the parties at the evidentiary hearing. *See supra* note 1.

had retailed Fradan's products, so we affirm that finding.

¶ 29 The remainder of the trial court's findings of fact challenged by Fradan are not relevant to the application of the statute, and therefore, we need not review them. The trial court's relevant and material findings of fact were supported by sufficient evidence and are not clearly erroneous.

## CONCLUSION

¶ 30 The trial court's findings that Wilson Supply entered into a manufacturer-to-retailer direct business relationship and that Wilson Supply in fact marketed Fradan's products at retail as final sales to end users were supported by sufficient evidence and therefore were not clearly erroneous. The trial court did not err as a matter of law in concluding on the basis of those findings of fact that Wilson Supply was a dealer under the buy-back statute. Having concluded that Wilson Supply was a dealer, the trial court properly applied the buy-back statute by determining that Fradan, as the manufacturer that supplied Wilson Supply wholegoods and parts for sale at retail, was required to repurchase Wilson's unsold Fradan inventory at the time Wilson Supply terminated its oral retail sales agreement with Fradan. Accordingly, we affirm.

¶ 31 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice HOWE, and Justice WILKINS concur in Justice RUSSON'S opinion.